489 P.2d 1229

Jack R. SCHULDES et al., Appellants and Cross-Appellees,

v.

Paul WUBBOLDING, Executor of the Estate of Horace E. Comer, Deceased, et al., Appellees and Cross-Appellants.

No. I CA–CIV 1307.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 27, 1971.

Rehearing Denied Dec. 1, 1971.

Rawlins, Ellis, Burrus & Kiewit, by Chester J. Peterson, Phoenix, for appellants and cross-appellees.

Jennings, Strouss & Salmon, by Jon L. Kyl, Phoenix, for appellee and cross-appellant Paul Wubbolding, Executor of the Estate of Horace E. Comer, Deceased.

Thomas W. Murphy, Phoenix, for appellees and cross-appellants Martori and Talamini, a co-partnership doing business as The Steak House.

EUBANK, Judge.

This appeal primarily involves the construction of the provisions of a written lease and the duties and obligations of the parties arising therefrom. A question is also raised concerning this Court's jurisdiction to consider the lessors' cross-appeal.

On December 14, 1967, the plaintiffs in the trial court being appellees, cross-appellants here and referred to as the "lessors", filed their complaint against the defendants and appellants, cross-appellees here, referred to as the "lessees", alleging that they had entered into a written lease agreement on May 22, 1967, that the lessees had breached the lease by their failure to pay $3,560 in rent; $1,253.13 in taxes and a paving assessment in the sum of $59.69 and that they had remanded possession but the lessees had failed to deliver possession to them. They prayed for "restitution of possession of the premises," together with damages, costs and attorneys' fees. Concurrently with the filing of the complaint, lessors applied for and received a writ of attachment requiring the sheriff to attach property owned by the lessees equal to the sum of $3,560. The return filed on December 21, 1967 reports that the sheriff attached a sizeable quantity of liquor and $291.21 in cash on December 15, 1967.

The lessees filed their answer and counterclaim on June 12, 1968. The answer admitted that the lessees were indebted to the lessors in the sum of $400 for rent, and admitted that they had not paid the taxes and assessments required under the lease. They also admitted that the lessors had demanded possession and affirmatively alleged that lessors had wrongfully and actually taken possession from the lessees and refused to return it to them. Their prayer was that lessors be awarded only the sum that lessees had admitted in the answer ($400) and nothing else. The counterclaim consists of a claim against the lessors for breaching the lease by wrongfully taking possession of the leased premises, and lessees prayed for $100,000 in damages, together with attorneys' fees and costs. The lessors' reply denied this breach of the lease agreement.

The matter was tried to the court sitting without a jury in May of 1969. Neither side requested findings of fact or conclusions of law and none were made. On August 8, 1969, judgment was filed in favor of the lessees on all issues presented

by the lessors' complaint and in favor of the lessors on all issues presented by the lessees' counterclaim.

On September 11, 1969, the trial court modified the judgment by ordering that the $291.21 cash and the inventory of liquor held by the court under the writ of attachment be returned to the lessees. All parties appealed from this judgment.

The effect of the judgment is adverse to all of the legal theories advocated by all of the parties. Its pertinent parts are as follows:

"IT IS NOW ORDERED that judgment be and the same is hereby entered in favor of the defendants [lessees] on all issues presented by plaintiffs' [lessors] complaint, and

"IT IS FURTHER ORDERED that judgment be entered in favor of the counter-defendants' [lessors] upon the counter-claimants' [lessees] claim, and

"IT IS FURTHER ORDERED that each party shall bear their respective costs."

The lessees interpret the provisions of the judgment as inconsistent and in conflict, entitling them to judgment on appeal. Their specific contention on appeal is that since the trial court denied lessors the relief prayed for in their complaint it must, of necessity, have found that lessees were entitled to possession of the leased premises on the date the lessors reentered the leased premises and therefore the trial court wrongfully denied the relief requested in the counterclaim.

In support of this contention lessees cite Chadwick v. Winn, 101 Ariz. 533, 421 P.2d 890 (1966). They further argue they should be entitled to damages arising from the lessors' breach of the lease by their wrongfully taking possession from the lessees. We agree with Chadwick but its rule is not applicable where the construction of a contract or lease agreement, such as that present in this case, is involved. Under such circumstances the construction of a written agreement involves questions of law, or mixed questions of fact

and law, neither of which are binding on this court on review. T. D. Dennis Builder, Inc. v. Goff, 101 Ariz. 211, 418 P.2d 367 (1966); Park Central Development Co. v. Roberts Dry Goods, Inc., 11 Ariz.App. 58, 461 P.2d 702 (1969). However, where the trial court also denied relief on the counter-claim, we must construe all inferences in support of the entire judgment, and in order to do so must review the lease to see if its provisions support the judgment. It should be noted at this point that lessors contend that their right to judgment is based upon the express provisions of the written lease and the admissions of the lessees contained in the answer and pre-trial stipulation.

## THE LEASE

On May 22, 1967, the lessors and lessees executed a lease agreement wherein the lessees received possession of a restaurant and bar known as The Steak House, located in the city of Phoenix, for a term beginning June 1, 1967 through April 30, 1969, at a rental for the term of the lease of $41,400, payable $3,600 upon execution of the agreement (representing the first and last month's rent—June 1967 and April 1969 respectively) and $1800 on the first day of July, 1967, and the first day of each month thereafter. Additional rent was required if the enterprise was successful, which it was not, consequently, those provisions are inapplicable to this appeal.

Prior to the trial, the parties entered into a pretrial stipulation of fact admitting the lease agreement and admitting the payment dates and payments made by lessees to lessors as follows:

| | |
|---|---|
| May 27, 1967 | $3,600.00 (representing the first and last months' rent under the terms of the Lease). |
| July 5, 1967 | $1,800.00 |
| August 9, 1967 | $1,800.00 |
| September 13, 1967 | $ 500.00 |
| October 18, 1967 | $1,800.00 |
| November 18, 1967 | $1,340.00 |

The stipulation of facts further admits that the lessees were in possession of the leased premises until December 15, 1967, and that the lessees had made no payments for taxes or paving assessments while in possession. It also admitted that "Written notices were sent * * * [to the lessees] dated October 11, 1967, November 3, 1967, December 8, 1967, and December 14, 1967," hereafter discussed in detail. Finally, it was admitted that the lessors, after they took possession, received $601.13 which resulted from lessees' business and that lessors had deposited this amount in a trust account pending determination of the action.

The lease is clear that all rent payments beginning with the July 1, 1967, payment were to be paid by lessees, "on the first day of each and every month." The stipulation of facts shows that this covenant was breached by lessees every month that they were in possession of The Steak House. The record also shows that no payment of rent was made for the month of December, 1967. The stipulation shows that $500 was paid by lessees on September 13, 1967, for the September 1 rent payment. Lessees' explanation for this is that because of adverse business conditions lessors permitted them to apply $1300 of the April, 1969, advance payment to the September payment on condition that they repay it later. The record reveals that this sum has not been repaid to lessors.

The "notices" of October 11, 1967, and November 3, 1967, referred to in the stipulation of facts sent by the lessors and received by the lessees are identical and read as follows:

"You are hereby notified as Lessee and Guarantors that the Lease Agreement entered into May 22, 1967, concerning the Steak House located at 4041 North Central Avenue, Phoenix, Arizona, is in default due to the non-payment of rent.

"This letter constitutes the notice provided for in Paragraph 6, page 9 of the said Lease Agreement. Ten days here-

after action will be taken to enforce the rights of the Lessor."

Paragraph 6, page 9 of the Lease Agreement reads:

"6. That, upon the nonpayment of the whole or any portion of the rents hereby reserved or any other sum or sums of money due to Lessor under the provisions hereof or upon the nonperformance by Lessee of any other covenant or condition herein contained on the part of said Lessee to be kept and performed, within ten (10) days after notice in writing from Lessor of such default, then and in any of such events, said Lessor may, at its election, either distrain for said rent or other sums due or to become due hereunder or declare this lease at an end and recover possession of the demised premises as if the same were held by forcible detainer or pursue any other remedy available to it in law or in equity."

The October 1 rent payment was made within the limits of the 10-day notice on October 18.

This brings us to the crux of the case, the November 1 payment. The "notice" of November 3, for the November 1 rent payment, was not paid until November 18, or five days late and $460 short, or by check in the sum of $1340. The check in evidence shows that lessees deducted $460, from the required $1800 rental payment, for work done to the "compressors." The record shows that this work was done on two walk-in refrigerated boxes. If this sum was properly deducted from the rent as contended by lessees then the November rent payment, although late, was paid. However, if the sum was improperly deducted, the full rent was not paid and a breach of the lease provision occurred under Paragraph 6, page 9 of the lease, supra.

The lease agreement included not only the real property, but " * * * all improvements thereon and all fixtures and furnishings and equipment located therein; a schedule of which is annexed hereto and marked Exhibit 'A'." Exhibit A includes the two walk-in boxes in the "Equipment Inventory". The lease provides,

" * * * Lessee also agrees as follows:

* * * * * *

"At all times to keep said premises and the whole thereof, and said building, said improvements and said trade fixtures, furnishings and equipment, in a good, clean and sanitary condition, well appointed and painted, and to keep said building, said improvements erected on said premises and said trade fixtures, furnishings and equipment in good condition and repair, reasonable wear and tear alone excepted; except that Lessor agrees to be responsible for any necessary major repairs and replacement of the heating and refrigeration air conditioning equipment presently provided for on the premises, as well as, the roof and structural parts of the premises."

The lease is consistent throughout in its differentiation of the terms "improvements", "fixtures", "furnishings" and "equipment". As we have seen, by definition, the walk-in boxes were designated as "equipment" in Exhibit A attached to the lease. It is therefore clear to us that under the foregoing lease provision that the repair obligation for the walk-in boxes was on the lessees and, consequently, they failed by $460 to pay the November 1 rent payment thereby breaching the lease.

Lessees received the December 8, 1967 "notice" which reads as follows:

"My clients have asked me to commence a lawsuit against you for the breach of the Lease Agreement of May 22, 1967.

"As you know, according to the terms of the Agreement, you are responsible for the entire term of the Lease. Unless you surrender possession of the demised property on or before December 12, 1967, an action will be commenced. Your failure to pay rent, street assessments, and taxes, all as required by the Lease, constitutes your breach."

Lessees also received the "Notice of Forfeiture" dated December 14, 1967, which reads:

"You are hereby notified that due to your failure to perform certain terms and conditions of the Lease Agreement of May 22, 1967, the restriction of the transfer of the Series No. 6 Liquor License No. 0124 issued by the State of Arizona is hereby declared forfeited."

Thereafter, as noted at the beginning of this opinion, the complaint was filed, a writ of attachment issued and the lessors and sheriff executed the writ on the evening of December 15, 1967. Apparently, on the same evening the locks were changed and the lessors were in possession of The Steak House on December 16, 1967.

■ Paragraph 2, page 8 of the lease agreement specifically provides for the termination and entry of the lessors in exactly the circumstances present here. It states:

"2. At any time, under the provisions hereof, that Lessor shall become entitled to possession of said demised premises, then, at such time, lessor shall have the right, without notice to Lessee, and may lawfully enter upon said premises and repossess the same and expel Lessee, or those claiming by, through or under it, without being guilty of any trespass and without prejudice to any remedy or remedies which might otherwise be available to Lessor on account of the breach by Lessee of any of the covenants hereof, on the part of Lessee to be kept and performed, and, upon such re-entry, this demise shall cease and terminate and thereafter be held for naught, be forfeited and cease to exist, the entry of Lessor being notice of such forfeiture."

The effect of lessors' entry under Par. 2 of the lease expressly terminates the lease agreement, as of Decembr 16, 1967. In our view, the reentry and termination of the lease was an election-of-remedies by the lessors for the non-payment of rent and precludes lessors from collecting rent on the balance of the lease term, after Decem-ber 1967. See Camelback Land & Investment Co. v. Phoenix Entertainment Corp., 2 Ariz.App. 250, 407 P.2d 791 (1965), where the lessor was held bound by the express remedy for breach contained in the lease; See also, Baird, A Study of Arizona Lease Terminations, 9 Ariz.L.Rev. 187 (1967) where an excellent analysis of the statutes and case law is found.

We hold therefore that the lessors were entitled to judgment affirming their possession of the leased property.

## DAMAGES

In the case of Monaghan v. Barnes, 48 Ariz. 213, 61 P.2d 158 (1936) we find a similar fact situation to the one at bar. There plaintiff-lessee sued to reform the lease. The defendant-lessor cross-complained asking for possession and compensation based upon non-payment of rent. The Supreme Court, after rejecting reformation, held that the lease must be enforced according to its terms and reversed and remanded the matter to the trial court with instructions to render judgment in favor of the lessor for the rent due under the lease until its termination date. The termination date was the date of forfeiture of the lease. See also 49 Am.Jur.2d, Landlord and Tenant, pp. 1018, 1019, § 1054 (1970).

■ In our opinion the rent due and owing lessors on December 16, 1967, the date of termination, is applicable to the question of damages. Because the rent payments were stipulated to by the parties, we can determine the rent due lessors at the termination of the lease to be the sum of $3,560, which we arrive at in the following manner:

■ First, lessees paid only $500 to the lessors for the September 1 rental payment. They testified that lessors permitted them to apply $1300 of their last month's payment (April 1969) made as an advance payment of the last month's rent at the execution of the lease on May 27, 1967, upon the condition that lessees replace or repay it. By the terms of the lease the advance rental

payment constituted a part of the consideration for entering into the lease and as such is considered as earned by the lessors upon the execution of the lease. Loew v. Antonick, 82 Ariz. 204, 310 P.2d 825 (1956); Annot., 27 A.L.R.2d 656, Right of Lessor to Retain Advance Rental Payment, pp. 656–674, §§ 2–7 (1953). Therefore, $1300 was due lessors for the September 1 rent on December 16, 1967, the termination date of the lease.

Second, lessees paid only $1340 for the November 1 rental payment. This payment was short $460. For the reasons already discussed, lessees owe lessors $460 on the November 1 rent.

Third, lessees held possession through December 15, consequently owe the lessors $1800 rent which was due under the express provision of the lease on December 1, 1967, and therefore earned by lessors prior to termination of the lease.

Fourth, in our opinion no further rent is due lessors for, as we have seen, the lease was terminated on December 16, 1967, by lessors' reentry and forfeiture of the lease.

This brings us to the taxes. In the case of Bolon v. Pennington, 6 Ariz.App. 308, 432 P.2d 274 (1967) the court held that the non-payment of real property taxes was a material breach of a lease requiring such payment. In the case at bar, we find an express covenant on the part of the lessees to pay before delinquent any and all ad valorem taxes and assessments charged against The Steak House prorated as of June 1, 1967, the date lessees took possession. The 1967 tax statement introduced into evidence shows that the total taxes due on The Steak House for the year 1967 were $2148.22. Since lessees were in possession seven months, its pro rata share of the tax would be $1253.13 due lessors.

Neither the paving assessments nor the materialman's lien were introduced into evidence, consequently the proof fails in regard to them. The same is true regarding attorneys' fees. The lease authorizes the award of attorneys' fees. Although the trial court permitted the parties to file a statement of their respective claims for attorneys' fees in lieu of formal proof, our search of the record fails to reveal lessors' claim in this regard; consequently, attorneys' fees cannot be awarded.

The parties stipulated that lessors received and are holding $601.13 of lessees' funds in a trust account awaiting the determination of this action. Our review of the record fails to show any disposition of these funds. Consequently, these funds are declared offset against the rent and taxes due lessors herein unless they have already been paid to the lessees.

In summary, the lessors are entitled to judgment against lessees in the following amount:

| | | |
|---|---|---|
| Rent | – | $3560.00 |
| Taxes | – | 1253.13 |
| | | $4813.13 |
| Less offset: | | 601.13 |
| | | $4212.00 judgment |

In addition, the lessors are entitled to their costs, together with interest on the rent and prorated taxes, as liquidated damages, from the respective dates due until satisfied. Restatement of Contracts, § 337 (1932).

### LESSEES' ANSWER AND COUNTERCLAIM

Lessees' answer admitted their breach of several covenants of the lease: non-payment of rent, non-payment of taxes and assessments. The counterclaim alleged a breach of the lease by the lessors by their wrongfully taking possession and thereby causing lessees damages arising out of loss of food and liquor, and loss of business. It is clear from our previous discussion that the lessors did not wrongfully take possession, consequently, the judgment of the trial court, " * * * that judgment be entered in favor of the counter-defendant's upon the counter-claimant's claim, * *." is affirmed.

## JURISDICTION

■ At the same time that lessees filed their opening brief, they filed a motion to dismiss the lessors' cross-appeal. The basis for the motion was that lessees appealed only from that part of the August 8, 1969 judgment that denied them relief on their counterclaim, therefore, they contend, more than 60 days passed before the lessors filed their notice of appeal covering the remainder of the judgment and, therefore, the judgment against the lessors became final and not appealable. We considered the matter at the time the motion was made and entered our order of April 10, 1970, denying the motion on the basis of Rule 73(b), Rules of Civil Procedure, 16 A.R.S., as amended.

In lessees' opening brief, reply brief and answering brief on cross-appeal, they continue to reurge their motion to dismiss the cross-appeal, consequently, we will discuss our previous ruling.

The record shows that the judgment was filed on August 8, 1969, and that lessees filed a timely motion for new trial (Rule 59, Rules of Civil Procedure, 16 A.R.S.). (Lessors also filed a motion for a new trial but it was filed on the eleventh day and was untimely). The trial court denied lessees' motion on October 14, 1969, and they filed their notice of appeal and bond on December 12, 1969. The lessors' cross-appeal and bond were filed on December 24, 1969. Rule 73(b) (1), Rules of Civil Procedure, 16 A.R.S., as amended, requires that the notice of appeal be filed with the superior court within sixty days from the entry of the judgment appealed from. This time limit is extended by the filing of a timely motion for new trial pursuant to Rule 59, and the sixty-day period begins running only after the motion is denied (Rule 73(b) (2)).

In our April 10, 1970 order we held that Rule 73(b) was dispositive of the question. The last sentence of the first paragraph of the rule reads as follows:

"When an appeal is not perfected within forty-five days from the entry of the judgment or order appealed from, a cross appeal may be perfected by an opposing party within fifteen days from the date the appeal is perfected."

Lessees' appeal was not perfected within forty-five days of the day the judgment was entered. This language of Rule 73(b) appears clear enough to us to support the lessors' cross-appeal, additionally so, when we consider that the 1961 amendment of the rule specifically added the "cross appeal" language to eliminate the specific trap advocated here by the lessees. See State Bar Committee Note—1961, following Rule 73(b), Rules of Civil Procedure, 16 A.R.S. We reaffirm our April 10, 1970, order and hold that the cross-appeal is properly before this court and that we have jurisdiction to consider it on its merits. Edwards v. Young, 107 Ariz. 283, 486 P.2d 181 (1971).

The judgment of the trial court is reversed insofar as it applies to the lessors and the award of costs, and it is affirmed insofar as it applies to the lessees. This matter is remanded to the trial court for entry of judgment not inconsistent with this opinion.

JACOBSON, P. J., and HAIRE, J., concur.