Aleew Murray Myers, J.
At the trial of these three holdover proceedings, the landlord-owner (Century Paramount, successor of Paramount West Corp.) seeks to recover possession of its theatre from its tenant (Rock Land) and its undertenant, Griffith; while the tenant, Rock Land, successor corporation of Maidman Playhouses, Inc., seeks to recover possession from its subtenants Griffith Enterprises, Inc. and Leroy Griffith who currently occupy the theatre.
On December 28, 1960, Paramount West Corp. executed a 10-year lease with Maidman Playhouses, Inc. for the rental of that part of the Hotel Paramount known as the ‘ ‘ Diamond Horseshoe.” The lease provides that “ Tenant shall use and occupy demised premises for a theatre, of a high class legitimate type, off Broadway productions, motion pictures, fashion shows, business meetings, television studios and television productions and for no other purpose.” At its termination the lease was renewed for another 10-year period.
On November 14,1969, the landlord and tenant agreed in writing that the tenant would not rent the premises after April 25, 1970 for “ a Burlesque Theatre or for the exhibition of ‘ adult ’ or ‘ sex exploitation ’ films. ’ ’ At that time there was a subtenant in the theatre which the landlord considered undesirable because it was showing burlesque and the tenant agreed not to renew its lease.
Sometime in early 1970, Maidman assigned its lease to Eddie Bracken Ventures, Inc., with the landlord’s consent. During the time that Eddie Bracken Ventures had the lease, it negotiated an agreement with Leroy Griffith which purports to be a licensing agreement rather than a lease. When Griffith failed to sign the agreement, the president of Eddie Bracken Ventures, on July 28,1971 wrote “ Inasmuch as four weeks have elapsed and you *605 have not sent me back the lease agreement for the Stairway Theatre, I hereby notify you that we have no agreement.”
Shortly thereafter, Bracken defaulted in its payments to Maidman pursuant to its conditional lease agreement and on August 1, 1971 the lease was reassigned to Bock Land Corp. (formerly Maidman Playhouses, Inc.).
Sometime in late July or early August, Leroy Griffith entered into possession of the premises and began to prepare the theatre for the showing of burlesque which he has been showing ever since. Griffith claims, and it is unrefuted, to have paid Eddie Bracken $20,000, representing its payment obligation for the first two months and the last two months of the agreement.
On August 13, 1971 the landlord wrote a letter to its tenant, Bock Land, stating that the theatre was about to be reopened as a burlesque theatre in violation of the lease and asked Bock Land to take steps to discontinue this practice. Thereafter, on August 18,1971 the landlord sent the tenant a five-day notice to cure its default, invoking paragraph 17, the acceleration clause of the lease. On the same day that Bock Land received that letter, it sent a five-day notice to Leroy Griffith demanding that he discontinue using the premises as a burlesque theatre. At the same time Bock Land notified the landlord that it would “be happy to join with (the landlord) in any attempt to put the present occupant of the premises out of possession.” On August 24, 1971, the landlord sent Bock Land a letter giving it three days’ notice of the termination of the lease. Bock Land, on August 26, 1971, gave Leroy Griffith a three-day “ notice of termination and cancellation of your occupancy. ’ ’
When Griffith continued in possession, the landlord commenced a holdover proceeding against Bock Land (the tenant) and Griffith (the undertenant) serving the parties on September 2, 1971. On September 3, 1971, Bock Land instituted a summary proceeding against Griffith Enterprises and on September 16, 1971 it instituted a summary proceeding against Leroy Griffith.
The first issue that must be resolved is the nature of Griffith’s occupancy for that would determine the necessary due process to remove him from possession. He is not a squatter, having entered the premises under color of title after payment of a consideration of $20,000 to Bracken. Century-Paramount argues that Griffith is a mere licensee because the unsigned agreement speaks in the language of a license and never even uses such terms as landlord, tenant or rent. However, the nature of the document can be gleaned from its substance rather than its form. There is a monthly payment reserved for use of the premises; Griffith occupied the premises and Bracken in canceling the *606 agreement called it a “ lease agreement. ’ ’ In paragraph 7 it was agreed that if Bracken defaulted in the payment of rent to its landlord, Griffith would make such payment and deduct that amount from its monthly fee to Bracken. Had the agreement been executed it would have constituted a lease since Griffith would have had exclusive possession of the theatre and there was a reservation of rent although it was not so called (Meers v. Munsch-Protzmann Co., 217 App. Div. 541). Although the agreement was never executed, Bracken was paid a valuable consideration for Griffith’s right to enter into possession of the theatre. Since Griffith entered into possession of the premises under an unexecuted lease, Griffith was a tenant at will of the prime lessee (see Basch, Landlord and Tenant [2d ed.], §§ 1031,1032) entitled under ordinary circumstances to 30 days’ notice of termination pursuant to section 228 of the Beal Property Law.
However, as a sublessee, Griffith was subject to all the terms and conditions of the paramount lease (Bartholdi Realty Co. v. Robard, Realty Co., 156 App. Div. 528; 30-88 Steinway St. v. Bohack Co., 65 Misc 2d 1076). Accordingly, Griffith was subject to the restrictive covenant in the lease proscribing the use of the premises for burlesque and to the other terms and conditions including the landlord’s remedies in the event of default.
I find that Griffith was .operating a burlesque house in violation of the lease and is therefore subject to its default provisions.
It must now be determined whether the default provisions were correctly invoked (see First Nat. Stores v. Yellowstone Shopping Center, 21 N Y 2d 630) and whether there has been compliance with the procedural requirements of law.
Bespondent Bock Land argues that Century Paramount’s petition is defective because the notice upon which the holdover is predicated is not attached to the petition, citing Margolies v. Lawrence (67 Misc 2d 468). However, there is no requirement in law that the notice be attached to the petition. What is required (Real Property Actions and Proceedings Law, §'741, subd. 4) is a statement of the facts upon which the petition is based. Paragraphs 12 to 15 of the petition clearly state those facts reciting why the notice was given and how it was given. Therefore the fact that no notice was attached to the petition even though the petition states that the notice is attached as an exhibit does not render the petition defective. All the requisite facts are present in the petition.
Bespondent Bock Land’s contention that the notice of cancellation of the lease was ineffective is correct. Paragraph 17 of the lease provides the landlord with certain remedies in the *607 event of the tenant’s default in the performance of any obligations under the lease. The landlord may give the tenant a five-day notice to cure the default and upon the tenant’s failure to do so, he may accelerate the termination of the lease. The lease further provides that ‘ ‘ if the said default or omission complained of shall be of such a nature that the same cannot be completely cured or remedied within said five (5) days period, and if Tenant shall not have diligently commenced curing such default within such five (5) day period, and shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default ” the landlord may accelerate the lease.
Landlord’s contention that Rock Land could have cured the default within five days by forcefully closing the burlesque house is without merit because the law does not permit the ejectment or dispossess of a tenant without a lawful proceeding. Due diligence required Rock Land, in accordance with the provisions of the major lease, to promptly give Griffith five days’ notice to discontinue the showing of burlesque and in the event of noncompliance to promptly terminate the lease upon three days’ notice, thus consuming a minimum of eight days. Thereafter Rock Land was legally required to promptly seek a final judgment of possession against Griffith in a holdover proceeding duly instituted in this court and to remove Griffith from possession only pursuant to a warrant duly issued by this court. Such legal proceedings could reasonably consume another two weeks to a month.
In the case where a tenant must diligently commence to cure a default the landlord cannot serve a three-day notice of cancellation unless the tenant “ shall not thereafter with reasonable diligence and in good faith proceed to remedy or cure such default”. Therefore the landlord’s three-day notice of cancellation to Rock Land was premature because Rock Land was not given a reasonable opportunity to dispossess Griffith in the manner required by law before the service of such notice.
The novel question presented here is whether a landlord may evict a subtenant named in a summary proceeding against the prime tenant where it is determined that the prime tenant is not in violation of the lease and the subtenant is.
Century Paramount could enjoin Griffith’s proscribed use of the premises (Bartholdi Realty Co. v. Robard Realty Co., 156 App. Div. 528, supra). However, can it get possession of the premises from a subtenant while the prime tenant still holds a valid leased It cannot because there is neither privity of estate nor privity of contract between the landlord and the subtenant *608 (Stewart v. Long Island R. R. Co., 102 N. Y. 601). So long as Rock Land's lease is in effect and it retains a right of reversion against its subtenant, Rock Land is the only party who can remove its subtenant, Griffith. Century Paramount can only remove the subtenants when it can also remove the tenant and does remove the tenant. Therefore Century-Paramount’s petition against Griffith must be dismissed along with the dismissal of its petition against Rock Land.
The unly proceedings remaining therefore are the actions by Rock Land against Griffith Enterprises (Index No. L&T 73616) and against Leroy Griffith (Index No. L&T 78676). The petitions in both those actions are defective because no copy of the notices sent to the respondent is attached to them nor do they contain a factual statement of how the notices were given (Margolies v. Lawrence, 67 Misc 2d 468, supra). Subdivision 4 of section 741 of the Real Property Actions and Proceedings Law requires that the petition state the facts upon which the special proceeding is based. The petition must state how Griffith became a holdover and a bare allegation that petitioner duly notified the respondent in writing to cure his default in writing is insufficient when paragraph 27 requires that notices, if in writing are to be delivered to the tenant personally or “by registered mail addressed to tenant at the building of which the demised premises form a part * * * or left at any of the aforesaid premises addressed to tenant ’ ’. The respondent correctly raised this issue before the trial. Accordingly, Rock Land’s petitions against Griffith Enterprises and Leroy Griffith are also dismissed. The dismissals of all the petitions herein are without prejudice to the institution of another proceeding by each of the respective petitioners in accordance with this decision.