645 P.2d 1245

MAC ENTERPRISES, INC., an Arizona corporation, Plaintiff-Appellee,

v.

DEL E. WEBB DEVELOPMENT CO., an Arizona corporation, Defendant-Appellant.

No. 1 CA–CIV 4726.

Court of Appeals of Arizona, Division 1, Department B.

March 11, 1982.

Rehearing Denied April 7, 1982.

Review Denied April 27, 1982.

John D. Lewis, P. C. by John D. Lewis, Tempe, for plaintiff-appellee.

Kaplan, Jacobowitz, Hendricks & Bosse, P. A. by Henry Jacobowitz, Phoenix, for defendant-appellant.

## OPINION

EUBANK, Judge.

Del E. Webb Development Co. (Webb) appeals from the summary judgment in favor of Mac Enterprises, Inc. (Mac) on the issue of Webb's liability, as landlord of the primary lease, to Mac, the sublessee of Webb's tenant—Sun City Pro Shops (Pro Shops), arising out of the termination of Mac's sublease.

Webb raises three issues on appeal: (1) whether part performance takes the sublease out of Webb's statute of frauds defense, (2) whether Webb's actions estopped it from pleading or raising its statute of frauds defense, and (3) whether Webb tortiously interfered with Mac's sublease estate. The first two issues relate to Count I of Mac's complaint, which alleges damages from Webb and others in the sum of $100,-000 for the early (2 years) termination or breach of its sublease with Pro Shops. The third issue, interference with contract, arises from Count II of the complaint and also alleges $100,000 damages due from Webb and others. The summary judgment appealed from does not specify the Count upon which judgment was awarded, consequently, we must assume it was awarded Mac on both Counts, since both were raised in the motion.

Since Mac contended in the trial court and here that Webb was a party to its written sublease with Pro Shops, the interpretation of the primary lease and the sublease are questions of law, which are proper for summary disposition. *Schuldes v. Wubbolding*, 15 Ariz.App. 527, 489 P.2d 1229 (1971). However, since we disagree with the disposition of those issues by the trial court, the summary judgment is reversed. On remand we direct that summary judgment be awarded Webb on both Counts of the complaint.

■ Mac contended below and here that Webb was a party to its sublease with Pro Shops. This contention is based primarily on Exhibit A attached to Mac's complaint.[1] The exhibit is the sublease dated September 1, 1974. Its introductory paragraphs read as follows:

### SUBLEASE

THIS SUBLEASE, made and entered into this First day of September, 1974, by and between SUN CITY PRO SHOPS, INC., an Arizona corporation, hereinafter referred to "Lessee," and MAC ENTERPRISES, INC., an Arizona corporation, hereinafter referred to as "Sublessee," and the DEL E. WEBB DEVELOPMENT CO., an Arizona corporation, hereinafter referred to as "Landlord,"

### WITNESSETH:

WHEREAS, Sublessee is desirous of subleasing from Lessee certain premises located in the Willowcreek/Willowbrook Golf Course Snack Shop, the Riverview Golf Course Snack Shop, and the Lakes West Golf Course Snack Shop, hereinafter referred to as "Snack Shops", to be used for first-class snack shops, and for no other purposes.

NOW, THEREFORE, it is mutually agreed by and between the parties as follows:

The sublease then details the estate for a term of years (55 months) conveyed by Pro Shops, Inc. (Pro Shops), as "lessee" to Mac as "sublessee." Although Webb is designated as "Landlord", the provisions of the sublease do not reflect any undertaking by Webb, nor was the sublease executed by Webb. It was executed by Pro Shops as "lessee" and Mac as "sublessee." Further, there is no provision for the early termination of the sublease by notice, except of course termination for the breach of specific conditions not involved here. Thus, as a matter of law Webb was not a party to the sublease. It describes Webb as the landlord and that is exactly what Webb was under the primary lease with Pro Shops.

1. There was a second sublease executed between the Pro Shops and Mac on the same day as Exhibit A. It was not included as an exhibit attached to the complaint. The terms of the conveyance are the same as those in Exhibit A, but it covered snack shops located at the north and south golf courses.

The record shows that Webb owned multiple golf courses and related buildings in Sun City, Arizona, and on April 1, 1970, by written conveyance, it leased its Golf Course Pro Shops to Pro Shops to operate for a term of years. Subsequently, on December 15, 1972, the lease was amended in order for Webb to approve of Mac as the sublessee of a snack shop from Pro Shops and to satisfy Mac's demand for a longer sublease term. Provision 2 of the amendment reads:

2. Lessor [Webb] agrees and consents to Lessee [Pro Shops] entering into a sublease for the snack shop portion of the new portion of the premises added to the lease by this amendment. Lessor acknowledges that the terms of said sublease will extend beyond the term of the lease amended hereby and agrees to recognize said sublease in the event Lessor and Lessee are unable to agree on the terms for renewal of said lease or in the event Lessor elects to exercise its right of cancellation granted in said lease.

The sublease, which was executed by Pro Shops and Mac on the same day, December 15th, was for a three-year term. This term, as noted above, exceeded the term of Pro Shops under the primary lease, hence, by the amendment Webb validated the extended sublease term for Mac under the December 15th sublease.

The 1970 primary lease ended by its own terms and was then replaced by a new primary lease between Webb and Pro Shops. This new written primary lease was for a six-year term. Like the prior primary lease, it contained a cancellation clause:

A. This lease may be cancelled by Lessor [Webb] at any time during the term hereof upon giving sixty (60) days' notice in writing to Lessee [Pro Shops]. In the event of termination of this lease by Lessor, for any reason other than a default by Lessee under the terms of this lease, Lessor agrees to repurchase all merchandise, inventory and equipment owned by Lessee and being used in the business herein concerned, at a price to be determined by agreement at that time. In the event the parties are unable to agree upon a repurchase price for said merchandise, inventory and equipment, the parties agree that said price shall be determined by an appraisal to be made by a disinterested third party selected by the parties.

\*     \*     \*     \*     \*     \*

C. Lessor shall have an option to withdraw the snack shop operations from the effect of this lease upon giving thirty (30) days' notice in writing to Lessee.

On September 1, 1974, Pro Shops and Mac entered into a new sublease. It is the sublease involved *sub judice* and the one attached to the complaint and marked Exhibit A. This new sublease covered, in part, the same estate (Riverside Golf Course Snack Shop) as did the prior December 15, 1972 sublease and the December 15, 1972 amendment of the prior primary lease. In addition to an extended term of 55 months, the September 1st sublease also included two additional snack shops located at Willowbrook and Lakes West golf courses.[2] The new sublease did not include a cancellation clause, and this time no amendment to the new primary lease term was either requested by Pro Shops or by Mac. Further, as noted above, Webb did not execute the new sublease.

On February 14, 1977, following Webb's enforcement of the cancellation clause in the primary lease, Pro Shops sent Mac a written notice terminating the sublease estate effective May 31, 1977. The notice states that on that date Webb would retake possession of all facilities and they (Webb) would discuss with Mac the inventory and property which would remain. No agreement could be reached between Webb and Mac on the termination of the sublease and this action resulted.

In the trial court, following discovery, both Webb and Mac moved for partial summary judgment. The trial court granted judgment to Mac against Webb. Webb appeals that determination.

2. See footnote No. 1, *supra*.

The first two issues involve Webb's Statute of Frauds defense. The Statute of Frauds, A.R.S. § 44–101(6), provides:

No action shall be brought in any court in the following cases unless the premises or agreement upon which the action is brought, or some memorandum thereof, is in writing and signed by the party to be charged, or by some person by him thereunto lawfully authorized:

\* \* \* \* \* \*

6. Upon an agreement for leasing for a longer period than one year, or for the sale of real property or an interest therein. Such agreement, if made by an agent of the party sought to be charged, is invalid unless the authority of the agent is in writing, subscribed by the party sought to be charged.

A.R.S. § 44–101(6) requires a lease for a term longer than one year to be reduced to writing and signed by the party to be charged. In addition, A.R.S. § 33–401 requires that an estate in land for a term of years be conveyed "by an instrument in writing, subscribed and delivered by the party disposing" of it. Since Webb is the party charged and no conveyance was made by it to Mac, the Statute is a good defense unless some legal reason exists precluding it.

Mac contends that Webb is a party to the September 1, 1974 sublease. This contention relies on the doctrines of estoppel, part performance, and acquiescence arising from certain acts by Webb. Mac concedes that there are no disputed issues of fact and contends that only issues of law are before us. Webb agrees. Thus, we must begin by analyzing the leasehold relationships between Webb, Mac and Pro Shops.

The April 1, 1970 and April 1, 1973 primary leases from Webb, landlord and lessor, to Pro Shops, tenant and lessee, conveyed an estate for a term of years to Pro Shops and includes the following elements: (1) an estate in the lessee Pro Shops, (2) a reversion in the landlord Webb, (3) exclusive possession and control of the real property in Pro Shops, and (4) an instrument or agreement between the parties. Elements (1), (2) and (3) constitute the privity of estate and (4) constitutes the privity of contract between Webb and Pro Shops. C. H. Smith, *Real Property Survey*, 102 (West 1956). The December 15, 1972, and September 1, 1974 subleases from Pro Shops, lessee, to Mac, sublessee, also conveyed an estate for a term of years to Mac out of Pro Shops' leasehold estate, and includes the following elements: (1) an estate in the sublessee Mac, (2) a reversion to the lessee Pro Shops, (3) exclusive possession and control of the snack shop area in Mac, and (4) an instrument or sublease between the parties. Elements (1), (2) and (3) constitute the privity of estate and (4) constitutes the privity of contract between Pro Shops and Mac. *Id.*

In J. Rasch, *N. Y. Landlord & Tenant*, § 233 (2d Ed. 1971) the nature of subtenancy is accurately described as follows:

The subtenant receives his estate from the sublessor. He holds his estate from the sublessor alone, and then only by reason of the covenants contained in the sublease.... The relationship of landlord and tenant exists between them. Accordingly, as between a subtenant and his sublessor all of the incidents of the relationship of landlord and tenant apply.

Accordingly, two separate estates for a term of years were created: First, the primary leases of April 1, 1970, and April 1, 1973, between Webb and Pro Shops, resulting in privity of estate and contract between them; and second, the subleases of December 15, 1972, and September 1, 1974, between Pro Shops and Mac resulting in privity of estate and contract between them. The effect of the December 15th amendment of the primary 1970 lease was to bind Webb to a term of three years with Pro Shops on its December 15, 1972 sublease with Mac. Thus, Mac received the assurance it sought from Pro Shops for a three-year term in order for Mac to recover its investment.

The December 15, 1972 sublease contained the following surrender provision:

28. SURRENDER OF LEASE: The voluntary or other surrender of this lease by Tenant [Mac] or a mutual cancellation thereof shall not work a merger, and shall at the option of Landlord [Pro Shops] terminate any or all existing subleases or concessions, whether or not previously consented to by Landlord, or may at the option of Landlord operate as an assignment to it of any or all such subleases or concessions.

When Mac and Pro Shops entered into the September 1, 1974 sublease, the December 15th sublease for the Riverside Snack Shop still had one year to run on its term. Since the new September 1st sublease covered, in part, the same estate as the prior December 15th sublease (Riverside Snack Shop), the legal effect was that Mac surrendered the prior estate because under Section 28 of the December 15, 1972 sublease, *supra*, a merger of estates could not occur. Since the express purpose of the December 15th amendment of the 1970 primary lease between Webb and Pro Shops was to insure Mac a three-year term under the December 15th sublease, and since Mac was in actual possession until May 1977, a period in excess of the three-year term provided for by the amendment, the promise made by Webb to Pro Shops for the benefit of Mac's sublease was fully performed by December 15, 1975. However, there was no similar amendment of the new April 1st, 1973 primary lease.

▌ At the time of termination of the April 1, 1973 primary lease and the September 1st, 1974 sublease[3] on May 31, 1977, there existed the primary lease estate for a term of years between Webb and Pro Shops and the sublease estate for a term of years between Pro Shops and Mac.[4] Since the sublease estate is carved out of the primary lease estate, and subject to its reversionary interest, it is clear that the estate conveyed by Pro Shops, Lessee, to Mac, Sublessee, cannot exceed the primary estate conveyed by the primary lease. *Century Paramont Hotel v. Rock Land Corp.*, (N.Y.C.Civ.Ct.N.Y.Co.1971) 68 Misc.2d 603, 327 N.Y.S.2d 695.

49 Am.Jur.2d, *Landlord and Tenant*, § 511. Furthermore, the sublease estate is subject *to the limitations* imposed on the primary leasehold estate. The only exception to this rule is pointed out by Mac citing *Byrd v. Peterson*, 66 Ariz. 253, 186 P.2d 955 (1947). *Byrd* stands for the almost universal rule that the sublessor cannot surrender his estate at the expense of the estate of the sublessee because the sublessor's reversionary interest is encumbered by the sublease with the sublessee. There was no surrender by Pro Shops here however. Its lease was terminated by Webb under its reserved right to terminate the estate set out in the lease cancellation clause, *supra*. We hold, therefore, that since Mac's sublease estate was subject to the primary lease cancellation clause, *supra*, that Webb is not liable to Mac for the proper termination of the sublease pursuant to the terms of the primary lease.

▌ Mac argues, however, that the cancellation clause effect on the subleases was waived by Webb. This contention is based on the clause contained in both the April 1, 1970 and April 1, 1973 primary leases which required Pro Shops to obtain Webb's written approval of any sublease and sublessee, prior to subleasing. In addition, the clause required that the sublease require the sublessee to assume all of the provisions of the primary lease and that Pro Shops remain responsible to Webb on the obligations undertaken regardless of the sublease. Further, the April 1, 1973 primary lease specifically provided that, "all existing snack shop leases, and renewals thereof, with present subtenants are hereby approved." Thus Mac contends that the quoted language approved a 55-month term of its sublease outside of the cancellation clause. We disagree.

This provision is a relatively standard clause designed to protect the landlord's reversion interest by requiring Pro Shops to obtain the written approval of both the sublease and the sublessee from Webb. The quoted language satisfies the written

---

**3.** See Footnote No. 1, *supra*.

**4.** *Id.*

approval of Mac's sublease and of Mac as the sublessee, but the parties to the primary lease are still Webb and Pro Shops. It is Pro Shops' obligation to obtain Webb's written approval. Mac is not a party to the primary lease hence there is no privity of estate or contract between it and Webb. Since there is no privity between them there can be no waiver of a right, obligation, or undertaking under the primary lease. *See* Comments and Illustrations, *Restatement of Property*, Second, § 15.2. As between Webb and Pro Shops there was no waiver since written approval was given as required.

Mac's citation of *Cress v. Switzer*, 61 Ariz. 405, 150 P.2d 86 (1944) does not change our conclusion. There the statute of frauds issue was between the landlord and his tenant based on an oral lease for a term longer than a year. Privity between the parties existed. It does not *sub judice*.

■ Mac's further contention that its part performance takes the matter out of the statute of frauds fails for several reasons. First, as described above, there was no privity of estate or contract between Mac and Webb on the primary leases. Second, the alleged part performance was not "unequivocally referable" to any oral contract between Mac and Webb. *Gene Hancock Construction Co. v. Kempton & Snedigar Dairy*, 20 Ariz.App. 122, 125, 510 P.2d 752, 755 (1973). 3 *Williston on Contracts*, § 494 (3d Ed. 1960). Indeed, no oral contract between Mac and Webb is even established by the record. Finally, Mac failed to affirmatively set out any referable oral contract with Webb in its brief.

■ The same lack of evidence involves Mac's contentions of estoppel and acquiescence. In *Trollope v. Koerner*, 106 Ariz. 10, 18, 470 P.2d 91, 99 (1970), our Supreme Court, after describing equitable estoppel and promissory estoppel, noted that "both forms require a justifiable right to rely [on representations] on the part of the representee or promisee." Here the record fails to establish a promise by Webb to Mac and consequently there exists no right to rely by Mac. Mac knew that it was subleasing from Pro Shops, that Webb was the landlord (see Exhibit A, *supra*), and if the terms of the primary lease were important to Mac it should have inquired into them. A contract or lease cannot be formed or created by estoppel. *Cf. Orcutt v. Tucson Warehouse & Transfer Co.*, 83 Ariz. 200, 205, 318 P.2d 671, 674 (1957); 31 C.J.S., *Estoppel*, § 151. A finding of justifiable reliance under the facts here would entirely negate the statute of frauds and the policy requiring a writing in A.R.S. § 44–101(6), *supra*, transactions.

We therefore answer Webb's first two questions in the negative. Since there was no part performance or basis for estoppel or acquiescence, Webb's statute of frauds defense against Mac's complaint is a good and sufficient defense to the complaint and it was entitled to summary judgment.

■ Turning to the third issue, whether Webb tortiously interfered with Mac's sublease estate, we hold that Webb is also entitled to judgment on this claim as a matter of law. For the reasons set out above, Webb had the right under its primary lease to cancel Pro Shops' lease, *supra*. It therefore did what it had the right and power to do. Thus no legal basis exists for the alleged tort. *Restatement of Torts* 2d, § 766. *Cf. D'Oca v. Delfakis*, 130 Ariz. 470, 636 P.2d 1252, 1254 (App.1981).

The summary judgment for Mac is reversed. The matter is remanded to the trial court with instructions to enter judgment for Webb on both counts of the complaint.

JACOBSON, P. J., and HAIRE, J., concur.