719 P.2d 1081

**Marlin D. KUYKENDALL,
Plaintiff/Appellee,**

v.

**TIM'S BUICK, PONTIAC, GMC & TOYOTA, INC., an Arizona corporation; Albert M. Coury, Sr., Jane Doe I Coury, his wife; Thomas A. Coury, Jane Doe II Coury, his wife; Tim Coury, and Jane Doe III Coury, his wife, Defendants/Appellants.**

No. 2 CA–CIV 5495.

Court of Appeals of Arizona, Division 2, Department B.

Dec. 20, 1985.

Reconsideration Denied Jan. 28, 1986.

Review Denied May 6, 1986.

Snell & Wilmer by Robert B. Hoffman, Phoenix, for plaintiff/appellee.

Owens, Rybarsyk & Nussbaum, P.C. by Paul M. Rybarsyk, Scottsdale, for defendants/appellants.

## OPINION

LIVERMORE, Judge.

This is an appeal from a forcible entry and detainer judgment entered in favor of the plaintiff, Marlin D. Kuykendall. Defendants claim that the trial court lacked subject matter jurisdiction because the subject property is located on an Indian reservation, that the plaintiff failed to join the United States as an indispensable party and that the trial court erred in granting plaintiff relief on the merits. We affirm.

In 1969 plaintiff entered into a 25-year commercial lease with the Yavapai-Prescott Indian Tribe. In 1979 plaintiff subleased the land to two individuals, Smith and Henkel, who formed Smith-Henkel Buick, Pontiac, GMC & Toyota, Inc. (Smith-Henkel). Smith-Henkel was subsequently purchased by Scott-Carter Buick, Pontiac, GMC & Toyota, Inc. (Scott-Carter). In 1983 Scott-Carter assigned its interest in the sublease to defendant Tim's Buick, Pontiac, GMC & Toyota, Inc. (Tim's). On February 28, 1984, plaintiff filed a complaint in Yavapai County Superior Court for a writ of restitution under Arizona's forcible entry and detainer statutes (A.R.S. §§ 12–1171 et seq. and A.R.S. § 33–361). Plaintiff alleged that his sublease agreement with Smith-Henkel was void, that Smith-Henkel had, in any event, failed to pay rent, that defendants' rights of possession were only through the sublease with Smith-Henkel and that defendants were in possession only as tenants at will or by plaintiff's sufferance.

## I

The defendants' first contention is that the plaintiff is foreclosed from relief in state court because the property (the subject of plaintiff's action) is located on an Indian reservation. Defendants argue that the maintenance of a forcible entry and detainer action concerning real property located on an Indian reservation is preempted by federal law and infringes on the Yavapai-Prescott Tribe's sovereignty.

### Disclaimer and Federal Preemption

■ Arizona's Constitution specifically disclaims the state's interest in

"all right and title ... to all lands lying within [the state's] boundaries owned or held by any Indian or Indian tribes ... [and] until the title of such Indian or Indian tribes shall have been extinguished, the same shall be, and remain, subject to the disposition and under the absolute jurisdiction and control of the Congress of the United States." Ariz. Const. Art. 20, § 4.

This constitutional provision is "a disclaimer of 'only the state's proprietary interest in Indian lands and not its governmental interest.'" *United States v. Superior Court,* 144 Ariz. 265, 274, 697 P.2d 658, 667 (1985), quoting *Francisco v. State,* 113 Ariz. 427, 430, 556 P.2d 1, 4 (1976). See also *Alexander v. Cook,* 90 N.M. 598, 566 P.2d 846 (1977). A forcible entry and detainer action does not involve proprietary interests. A.R.S. § 12–1177(A) precludes an inquiry into the merits of title. "The only issue to be determined is the right to actual possession." *DVM Co. v. Stag Tobacconist, Ltd.,* 137 Ariz. 466, 467, 671 P.2d 907, 908 (1983). Moreover, Arizona's constitutional disclaimer does not operate as "a complete abdication of state power in those situations where Congress has permitted the states to exercise jurisdiction." *United States v. Superior Court,* supra 144 Ariz. at 274, 697 P.2d at 667.

It follows that if adjudication of this dispute is not preempted by federal law, then the forcible entry and detainer action may be maintained in state court. Defendants contend that the Civil Rights Act of 1968 did preempt this adjudication. 25 U.S.C. § 1321 et. seq. That act provided a mechanism for states to assume jurisdiction over "civil causes of action between Indians or to which Indians are parties which arise in ... Indian country," but simultaneously limited the scope of assumable jurisdiction. 25 U.S.C. § 1322. Defendants' federal preemption argument relies on that limitation which states, in pertinent part:

"Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including water rights, *belonging to any Indian or* any *Indian tribe,* band, or community that is *held in trust* by the United States or is subject to a restriction against alienation imposed by the United States ... or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of *such property or* any *interest* therein." 25 U.S.C. § 1322(b) (emphasis added).

We do not disagree with defendants' conclusion that this provision and Arizona's failure to assume jurisdiction under the act leave the state without jurisdiction to adjudicate matters governed by the act. See *Francisco v. State,* 113 Ariz. 427, 556 P.2d 1 (1976). However, by its terms, this federal statute pertains only to the adjudication of property interests belonging to Indians or Indian tribes and held in trust by the federal government. No such interest is affected by the instant forcible entry and detainer action. Neither the plaintiff nor the defendants are members of the Yavapai-Prescott Tribe. The state court must only determine, as between two non-tribal members, who has a superior right of possession to land under a lease from the tribe. The states have always retained civil jurisdiction over disputes between non-Indians involving interests in property within an Indian reservation located within a state. *Surplus Trading Co. v. Cook,* 281 U.S. 647, 651, 50 S.Ct. 455, 456, 74 L.Ed. 1091 (1930). See also *Langford v. Monteith,* 12 Otto 145, 102 U.S. 145, 26 L.Ed. 53

(1880) (forcible detainer action between two "white men," to be tried before a territorial district court pursuant to a territorial statute governing such actions).

■ The second prong of defendants' attack upon state jurisdiction involves application of the infringement test of *Williams v. Lee*, 358 U.S. 217, 79 S.Ct. 269, 3 L.Ed.2d 251 (1958). In *McClanahan v. Arizona State Tax Commission*, 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973), the United States Supreme Court noted the continued vitality of the infringement test and the balance between state and tribal interests in the area of disputes involving non-Indians. The Court stated that

"[t]he *Williams* test was designed to resolve the conflict by providing that the State could protect its interest up to the point where tribal self-government would be affected." Id. at 179, 93 S.Ct. at 1266.

Plaintiff notes that the Yavapai-Prescott Tribe Law and Order Code § 2.1 (1979) grants exclusive jurisdiction to the tribal court over all suits involving the tribe and any other party where the action arises out of a lease. Where the tribe is not a party, the same code provision grants jurisdiction to the tribal court only if the parties stipulate to the court's jurisdiction. The tribe is not a party to this action. The tribal code provision eschewing jurisdiction over disputes between non-tribal members indicates that the assumption of jurisdiction by the state is not an infringement upon the tribe's inherent powers of self-government. In addition, nothing in the state adjudication will legally affect the relationship between the plaintiff and the tribe. That matter has been the subject of federal court action, *Yavapai-Prescott Indian Tribe v. Watt*, 707 F.2d 1072 (9th Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983), and will continue to be beyond state jurisdiction. In the instant case, we can see no interference with tribal self-governance. Cf. *Fort Mojave Tribe v. County of San Bernardino*, 543 F.2d 1253 (9th Cir.1976), cert. denied, 430 U.S. 983, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977) (finding no legal burden imposed upon the Ft. Mojave Tribe as a lessor where the state imposes possessory interest tax upon its lessees).

Defendants' reliance on *Chino v. Chino*, 90 N.M. 203, 561 P.2d 476 (1977) is misplaced. In that case a woman, not a member of the Mescalero · Apache Tribe, brought a forcible entry and wrongful detainer action in state court against her son who was a member of the tribe. The son was in possession of the family home, located on an allotment within the Mescalero Apache Indian Reservation, which had been awarded to the mother in state court divorce proceedings.[1] Noting that the "action for forcible entry and unlawful detainer deals directly with the question of occupancy and ownership of land," id. 90 N.M. at 206, 561 P.2d at 479, and that tribal customs might differ from state law, the New Mexico Supreme Court found that the state court lacked jurisdiction in the matter. *Chino* is distinguishable from the case at bench.[2] Apparently, the New Mexico proceedings dealt with ownership as well as possession. Significantly, one of the parties in the dispute was an enrolled member of the tribe. We find the New Mexico holding inapplicable to the facts of the case at bench.

## II

■ Defendants assert that the United States, through the Secretary of the Interior, is an indispensable party to the litigation. Thus, failure to join the secretary as a party should have resulted in the dismissal of the action. Rule 19(a), Rules of Civil

---

1. It is probable, although not explicit in *Chino*, that the state court exceeded its jurisdiction in the divorce proceedings by alienating the property interest in the home of the tribal member husband. See 25 U.S.C. § 1322(b).

2. The New Mexico Court of Appeals has also found *Chino* to be distinguishable and upheld state court jurisdiction in a case involving only non-Indians, where damages were sought for interference with plaintiff's business activities on reservation land pursuant to a tribal permit to remove sand and gravel, *Alexander v. Cook*, supra.

Procedure, 16 A.R.S., provides that a person "shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties...." Defendants reason that, since the secretary may terminate any lease on the subject property, he must be a party if either plaintiff or defendant is to be accorded "complete relief." This ignores the legal posture of the forcible entry and detainer action brought by the plaintiff. Plaintiff is not claiming possession of the property "against the world" but only that his possessory interest is superior to that of defendants. The interests of the secretary and the tribe are irrelevant to this inquiry. The state court judgment gives the plaintiff no rights vis-a-vis the secretary and no greater rights in the land under the lease than were or will be determined by the secretary. See *Alexander v. Cook,* supra.

### III

 The sublease between plaintiff and Smith-Henkel incorporated the master lease between plaintiff and the tribe. The master lease required approval of subleases by the Secretary of the Interior. No subsequent sublease has been approved. In a letter to the plaintiff, the Department of Interior stated that occupancy by Tim's Buick constituted a breach of the plaintiff's lease with the tribe. The plaintiff testified that, in part, his effort to eject Tim's Buick was an effort to cure this breach.

A "sublease estate is subject *to the limitations* imposed on the primary leasehold estate." *MAC Enterprises v. Del E. Webb Development Co.,* 132 Ariz. 331, 335, 645 P.2d 1245, 1249 (App.1982) (emphasis original). As in *MAC,* there is no privity between the plaintiff and defendants in the case at bench. Hence, there is "no waiver of a right, obligation, or undertaking under the primary lease." Id. 132 Ariz. at 336, 645 P.2d at 1250.

Defendants claim that, because plaintiff was aware that defendants were in possession of the premises and making payments into an escrow (which had been drawn on by plaintiff), plaintiff was estopped from

terminating the lease. The major case relied upon by defendants is *Chadwick v. Winn,* 101 Ariz. 533, 421 P.2d 890 (1966). However, in that case the validity of the assignment of an interest in the lease was never an issue. Id. 101 Ariz. at 535, 421 P.2d at 892. Here, the validity of the sublease is central. Indeed, defendants' possession of the premises was in clear violation of the master lease. The plaintiff never acknowledged defendants' right to hold under the lease and only removed funds from escrow after terminating the lease with defendants' predecessor in interest. The evidence would support a finding that defendants were tenants at will and that plaintiff's removal of the escrow funds was simply compensation for use of the land up to the time of ejectment.

The judgment is affirmed.

HATHAWAY, P.J., and LACAGNINA, J., concur.