THE PEOPLE *ex rel.* THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, v. JOHN WALLISER, Defendant-Appellant.

Third District    No. 3—93—0282

Opinion filed March 1, 1994.—Rehearing denied March 30, 1994.

Michael Freeman, of Wheeling, for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, John Walliser (Walliser), appeals from a judgment of the circuit court of Will County awarding possession of a rental house to the Illinois Department of Transportation (IDOT) as a result of Walliser's failure to pay rent. At the trial of this forcible entry and detainer action, the trial court prohibited Walliser from asserting certain defenses. The court ruled that Walliser's defenses were not germane to the issues of superior possession rights or whether Walliser owed rent to IDOT. On appeal, Walliser argues the trial court committed error in failing to join a necessary party to the action and in excluding his defenses. For reasons which follow, we affirm the judgment.

## I. FACTS

Walliser is the sole shareholder and director of J. Walliser Ltd., an Illinois corporation (the corporation). The corporation is in the business of designing and building residential homes. The corporation built a home in Homer Township, Will County, Illinois (Walliser's home), in which Walliser has lived since June 9, 1989. Walliser used this home as a model to generate other home sales. The corporation stored its business equipment in Walliser's home. On August 30, 1989, Walliser purchased a five-acre parcel (the parcel) located approximately 500 feet west of his home for the purpose of continuing the corporation's business. At the time Walliser purchased the parcel, local zoning maps indicated the parcel would be zoned for residential use in the future. Walliser sought to have the parcel rezoned for residential and commercial use. He was ultimately unsuccessful in this endeavor due to sewage problems and the parcel's proximity to the right-of-way for a proposed Federal interstate highway project (the right-of-way).

For approximately eight months, Walliser unsuccessfully

attempted to sell his home. In April 1990, Walliser became aware that IDOT had shifted the right-of-way. During that same month, Walliser sent a letter to IDOT explaining his difficulty in selling his home and requesting that IDOT purchase the property. On May 18, 1990, IDOT sent a letter to Walliser indicating that his home was located directly in the right-of-way's path. In a letter dated June 25, 1990, IDOT informed Walliser that due to a slight shift of the right-of-way's location, a small part of the northern end of the parcel was also within IDOT's right-of-way. IDOT later agreed to purchase this portion of the parcel.

On June 26, 1990, Walliser met with IDOT representatives at his home. At this meeting, IDOT explained the available relocation benefits and assistance, including aid in locating and purchasing a replacement home. Walliser completed a "Project Relocation Plan Interview Form" to provide IDOT with information for his impending relocation. On this form, Walliser indicated that he did not wish to purchase a home, but rather preferred to construct a new residence for himself and his family. Walliser told IDOT that he wished to build the new home on the parcel.

On August 14, 1990, IDOT appraised Walliser's home at $188,000. IDOT's Bureau of Land Acquisition approved the appraisal on August 24, 1990. In a letter dated September 10, 1990, IDOT gave formal notice to Walliser that the right-of-way would require IDOT's purchase of his home and his eventual relocation. The letter indicated that Walliser might be entitled to reasonable moving expenses and a $7,900 supplement to aid in purchasing a replacement home. Pursuant to its regulations, IDOT computed this amount by locating three similar homes in the area. IDOT then calculated the difference between the appraised value of Walliser's home and the home which IDOT found to be most functionally similar to Walliser's home. IDOT stated in the letter that it anticipated Walliser's home would be acquired by IDOT as a result of the right-of-way construction on or about March 31, 1991. Finally, pursuant to IDOT's regulations, the letter stated that IDOT was required to give Walliser 90 days' general notice before the home was actually needed for the right-of-way construction. IDOT attached to the September 10 letter a formal offer to purchase Walliser's home for $188,000. A detailed, itemized statement of available relocation benefits was also attached to the letter.

On September 11, 1990, Walliser again met with IDOT representatives at his home. At this meeting, IDOT again explained the relocation assistance program to Walliser. The representatives also informed Walliser of the availability of three similar homes located

in Lockport, including the home used to compute Walliser's purchase supplement. Walliser rejected all of these homes and again expressed his preference to build a replacement home on the parcel. The corporation did not request relocation benefits on its own behalf or participate in the negotiations for the sale of Walliser's home.

On January 29, 1991, Walliser conveyed his home to IDOT in exchange for a payment of $188,000. On April 15, 1991, Walliser and IDOT executed a lease agreement. Under the terms of the lease, Walliser agreed to rent the home from IDOT so he could continue to maintain the location as his family's residence and storage facility for the corporation's equipment. During the lease period, Walliser was to construct his replacement home. The lease period ran from May 1, 1991, to April 30, 1992. Walliser agreed to pay rent totalling $1,125 per month. The corporation was not a party to the lease. Walliser paid rent on the lease in a timely fashion through August 1991, but made no further payments following that date.

In May 1991, Walliser began to experience financial difficulties. On May 14, 1991, Walliser spoke by telephone to Michael Cullian, the IDOT representative managing his relocation. In response to Walliser's request for relocation benefits, Cullian said Walliser would have to purchase a home for an amount in excess of $188,000 in order to receive any relocation benefits. Cullian also explained that IDOT would pay for reasonable moving expenses. Walliser explained he had exhausted his financial resources in his attempts to rezone and develop the parcel. As a result of the adverse zoning decisions, Walliser was unable to construct a replacement home on the parcel. Also, due to lack of funds, Walliser did not construct a replacement home at any other location.

Meanwhile, IDOT grew increasingly impatient with Walliser's failure to pay rent. In letters dated January 14, 1992, February 7, 1992 and April 28, 1992, IDOT demanded payment of the past-due, rent. On May 7, 1992, the Attorney General, on IDOT's behalf, executed a claim for back rent and a five-day notice of termination of Walliser's tenancy. This notice was served upon Walliser on June 17, 1992. The next day, IDOT filed a complaint in forcible entry and detainer against Walliser to regain possession of the home and to collect past-due rent. The complaint did not name the corporation as a defendant.

After IDOT served Walliser with notice of termination of tenancy, he again attempted to seek relocation benefits. In a letter dated June 10, 1992, Walliser requested from IDOT a "review of claims" for relocation benefits. IDOT's district engineer responded by letter on July 6, 1992, that it had no knowledge of any claims pending.

On July 14, 1992, Walliser filed a general appearance in the forcible entry and detainer action in which he stated his intention to represent himself *pro se*. Walliser filed a motion to dismiss or consolidate on July 22, 1992. In this motion, Walliser asked the court to consolidate the forcible entry and detainer action with another action in which the corporation asserted various claims against IDOT for relocation benefits. (The other action, entitled *Downers Grove National Bank v. Brown*, No. 3—93—0443, is currently under advisement in this court.) The motion also requested dismissal of the forcible entry and detainer action, asserting that IDOT had violated its own regulations and State and Federal statutes in denying relocation benefits and assistance to Walliser. This motion contained no affirmative defenses. Walliser did not file an answer to the complaint.

During the course of the trial, Walliser attempted to introduce evidence for the purpose of asserting various defenses to the complaint. During the early stages of the trial, the court allowed Walliser considerable latitude in examining the witnesses and admitting documentary evidence. Walliser first asserted that IDOT violated various regulations and statutes in denying him relocation benefits and assistance. Walliser also claimed IDOT attempted to evict Walliser in violation of the 90-day general notice and 30-day specific notice provisions prescribed by IDOT regulations. While the court initially allowed Walliser to introduce testimony and documentary evidence pertaining to these matters, the court ultimately ruled they were not germane to the forcible entry and detainer proceeding.

Walliser also argued that IDOT failed to provide a review of his claims for relocation benefits. In support of his position, he submitted the letters of June 10, 1992, and July 6, 1992. After questioning from the judge, Walliser admitted that he failed to file a formal claim for benefits as required by IDOT regulations. Accordingly, the court held that Walliser's defense was inapplicable. In addition, Walliser presented evidence on the issue of whether IDOT failed to provide him with the proper claim forms and assistance in requesting relocation benefits. The court held that this defense was not germane to the proceedings.

Finally, Walliser asserted that the monthly rent required by the lease exceeded the amount allowed by Federal law. The court held that this defense was not germane to the proceedings. As a result, Walliser was not allowed to present any argument or evidence to support this defense.

At the conclusion of the trial, the court held that IDOT was entitled to possession of Walliser's home and awarded IDOT $21,375

in past-due rent. Finally, the court stayed its order of possession until April 13, 1993. That same day, Walliser filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Walliser first argues that the trial court erred in failing to join the corporation as a necessary party to the forcible entry and detainer action. Walliser contends that because the corporation could be evicted without representation in the action, the corporation had a material interest in the litigation. We disagree. We find that Walliser's representation during the litigation was adequate to protect the corporation's interests.

■ Section 2—406(a) of the Code of Civil Procedure requires the joinder of all persons not parties to the litigation if those persons have interests which may be affected by a judgment in the litigation. (735 ILCS 5/2—406(a) (West 1992).) A "necessary party" is defined as a person whose presence is required for any of three reasons: (1) to protect the person's interest in the litigation's subject matter; (2) to enable the court to reach a decision which will protect the interests of persons already parties; or (3) to enable the court to make a complete determination of the controversy. (*Burt v. Board of Education of Coal City Community Unit School District No. 1* (1985), 132 Ill. App. 3d 393, 395-96, 477 N.E.2d 247, 249-50.) Where a present party adequately represents an absent person's interests, no error occurs in excluding the absent person. However, the absent person must have received actual and efficient protection. (*Burt*, 132 Ill. App. 3d at 397, 477 N.E.2d at 251.) An absent person need not be joined if the person shares identical interests with a present party to the litigation. (*Cameron v. Bartels* (1991), 214 Ill. App. 3d 69, 76, 573 N.E.2d 273, 277.) Finally, where a party objects to nonjoinder for the first time on appeal, it must appear that the judgment will effectively deprive the excluded party of some material right without a hearing. *Burt*, 132 Ill. App. 3d at 397, 477 N.E.2d at 250. ·

■ Here, Walliser was in a position to provide adequate protection to the corporation's interests because he shared an identity of interests with the corporation. We note that Walliser is the corporation's sole shareholder and director. Also, the corporation stored its equipment in Walliser's home, which Walliser also used as his residence. Consequently, both Walliser and the corporation had the same occupancy interests in the home. Because the main issue here involved possession of Walliser's home, Walliser provided the corporation with adequate representation in the litigation.

Moreover, Walliser raises his objection to nonjoinder for the first

time on appeal. The evidence showed that the corporation had brought a separate action on its behalf to pursue relocation benefits. Accordingly, the corporation had ample opportunity to present its claims to the court. Therefore, we cannot say that the judgment entered in the instant case deprived the corporation of any material rights without a hearing.

Walliser next argues that the court erred in excluding his affirmative defenses. Walliser claims his defenses were germane to the forcible entry and detainer action. We disagree.

■ Section 9—106 of the Code of Civil Procedure governs the admission of evidence in forcible entry and detainer proceedings. Section 9—106 states in pertinent part:

"The defendant may *** offer in evidence any matter in defense of the action. No matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise." (735 ILCS 5/9—106 (West 1992).)

A forcible entry and detainer proceeding is a summary statutory action to adjudicate possession rights and should not be burdened by other matters unrelated to the issue of possession. (*Miller v. Daley* (1985), 131 Ill. App. 3d 959, 961, 476 N.E.2d 753, 754-55.) Claims seeking monetary damages and not possession are not germane to the distinct purposes of a forcible entry and detainer proceeding. (*Sawyier v. Young* (1990), 198 Ill. App. 3d 1047, 1053, 556 N.E.2d 759, 763.) Claims which are germane to the issue of possession generally fall into one of four categories as follows: (1) claims asserting a paramount right of possession; (2) claims denying the breach of the agreement vesting possession in the plaintiff; (3) claims challenging the validity or enforceability of the agreement on which the plaintiff bases the right to possession; or (4) claims questioning the plaintiff's motivation for bringing the action. (*Sawyier*, 198 Ill. App. 3d at 1054, 556 N.E.2d at 763-64.) Finally, a court of review may sustain the trial court's decision on any grounds appearing in the record, regardless of whether the court made its decision on the proper grounds. *Estate of Johnson v. Condell Memorial Hospital* (1988), 119 Ill. 2d 496, 502, 520 N.E.2d 37, 39.

■ Here, Walliser argues that IDOT failed to follow its own guidelines in awarding relocation benefits. Walliser also contends that IDOT failed to provide him with the proper claim forms and assistance so he could file a claim for benefits. We disagree because we find that these defenses were not germane to the forcible entry and detainer proceeding. In essence, Walliser was attempting to assert claims for monetary relief. Claims for damages or monetary relief have nothing to do with the primary issue of possession. Thus, the trial court did not commit error in excluding Walliser's claims.

Second, Walliser contends that IDOT failed to provide him with the 90-day general notice and the 30-day specific notice required before a person may be forced to vacate his property. A lawful occupant of property may not be required to move unless IDOT has given at least 90 days' prior notice. (92 Ill. Adm. Code § 518.415(b) (1992).) Similarly, IDOT must also inform the occupant of the specific date by which the occupant must vacate the property. Moreover, IDOT must notify the occupant of that date at least 30 days before the property must be vacated. (92 Ill. Adm. Code § 518.420(a) (1992).) However, the 30-day notice is only to be given when the property will actually be required in 30 days for some reason, such as conducting a sale of buildings or for advertising for a demolition contract. 92 Ill. Adm. Code § 518.420(d) (1992).

Here, IDOT's letter of September 10, 1990, provided the 90-day notice because it explained the policy and stated that Walliser's home should be vacated by March 31, 1991. We note that Walliser received this letter nearly two years *before* IDOT instituted the present action. Furthermore, we conclude that IDOT had no obligation to give Walliser the 30-day specific notice. No evidence in the record indicates that Walliser's home would be needed for demolition or any other reason. Rather, the evidence indicates that IDOT terminated Walliser's tenancy for default on his rent obligations. Additionally, Walliser's lease gave IDOT the right to terminate tenancy and require the vacation of the home *without notice* in the event of default on rent payments. Because IDOT never indicated a need for the property for any reason, the 30-day notice was not required. For the purposes of this litigation, IDOT and Walliser occupied the positions of landlord and tenant. Accordingly, IDOT was entitled to institute proceedings against Walliser in forcible entry and detainer without providing the 30-day specific notice to vacate.

Third, Walliser claims that he was entitled to instruct IDOT to deduct his rent payments from any additional relocation benefits to which he was entitled. Walliser contends that the trial court erred in excluding this defense. Where a forcible entry and detainer action is brought for nonpayment of rent, the question of whether rent is due and owing is the crucial issue. (*Jack Spring, Inc. v. Little* (1972), 50 Ill. 2d 351, 359, 280 N.E.2d 208.) Accordingly, we find the question of whether IDOT was required to deduct Walliser's rent payments from the benefits that Walliser might be eligible to receive from IDOT was a germane defense. However, following our review of the record and applicable law, we conclude that Walliser was not eligible for any benefits under the regulatory scheme for dispensing relocation benefits.

IDOT may deduct from relocation payments any rent which a displaced person owes to IDOT. (92 Ill. Adm. Code § 518.110 (1992).) Displaced persons are eligible for reasonable moving expenses (92 Ill. Adm. Code §§ 518.705(a), 518.715(a) (1992)) and for replacement housing costs in excess of the purchase price of the displaced person's home (92 Ill. Adm. Code § 518.905(a) (1992)). A "displaced person" is any person who moves from real property or moves his or her personal property from real property being acquired by IDOT. 92 Ill. Adm. Code § 518.20 (1992).

Here, Walliser occupied his home as an owner. When Walliser sold his home to IDOT, he leased the home from IDOT while attempting construction on a new home. The record shows that Walliser never moved from the home or established residence elsewhere. Because Walliser never moved from the home, he was *not* a "displaced person" as defined by the Illinois Administrative Code. Accordingly, we determine that Walliser was not eligible for any relocation benefits. Thus, IDOT had no responsibility to offset the rent payments as a result of Walliser's ineligibility to receive relocation benefits. Consequently, we conclude the trial court committed no error in excluding reference to relocation benefits during the trial.

Fourth, Walliser argues the trial court erred in excluding his defense that IDOT charged rent which exceeded the fair rental value of his property in violation of Federal regulations. Under the terms of the lease, Walliser was required to make rental payments and pay the applicable real estate taxes on the home. The trial court prohibited Walliser from presenting any argument or evidence on this issue. Generally, defenses challenging the validity or enforceability of the agreement on which the plaintiff's right to possession is based are germane to a forcible entry and detainer action. (*Rosewood Corp. v. Fisher* (1970), 46 Ill. 2d 249, 257, 263 N.E.2d 833.) However, after our review of the cited Federal regulations and statutes, we conclude that this defense did not apply to Walliser.

According to the Federal regulation upon which Walliser relies, an agency may not charge rent that exceeds the fair rental value of the real property to short-term occupiers. (49 C.F.R. § 24.102(m) (1992).) This regulation refers to section 301(6) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (Act) 42 U.S.C.A. § 4601 *et seq.* (West 1983). The text of section 301(6) is substantially similar to the regulation. However, its application is limited *only* to Federal agencies. (42 U.S.C.A. § 4651(6) (West 1983).) Section 101(1) of the Act provides a literal definition of "Federal agency" which does not include State agencies. (42 U.S.C.A.

§ 4601(1) (West Supp. 1993).) By their very terms, the regulation and the Act do not apply to IDOT. Therefore, we find Walliser's contention to be meritless.

Moreover, even if the Act applies to IDOT, section 301 sets forth only guidelines for agencies and creates no causes of action in private landowners. Section 102(a) of the Act provides as follows:

> "The provisions of section 4651 of this title create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation." (42 U.S.C.A. § 4602(a) (West 1983).)

Section 301 creates no rights in a landowner which are enforceable in a Federal district court. (*Department of Transportation v. Zabel* (1977), 47 Ill. App. 3d 1049, 1051, 362 N.E.2d 687, 690.) Here, Walliser seeks to bind IDOT to strict compliance with section 301 of the Act. However, the Act clearly provides only guidelines and advisory policies. Additionally, the applicable sections of the Act give Walliser no enforceable rights. Accordingly, we conclude that Walliser had no right to judicial review of IDOT's rent charges under the Act. As a result, we conclude that the trial court did not err in excluding this defense at trial.

▪ Finally, Walliser asserts that IDOT sought to evict him in retaliation for demanding relocation benefits and for filing several requests for information. The defense of retaliatory eviction is a germane defense to a forcible entry and detainer proceeding. (*Clore v. Fredman* (1974), 59 Ill. 2d 20, 26-27, 319 N.E.2d 18.) However, we find that Walliser has waived this defense by failing to raise it in the trial court.

It is well established that questions not raised in the trial court are deemed waived and may not be raised for the first time on appeal. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 500, 475 N.E.2d 872, 879.) In the case at hand, the trial court did not prevent Walliser from asserting a claim for retaliatory eviction. However, the record shows that Walliser did not present any evidence to show that IDOT sought to evict him for any reason other than his failure to pay rent. Moreover, the record does not indicate that Walliser argued this contention before the trial court. Therefore, we conclude that Walliser waived this claim by not raising it in the trial court.

### III. CONCLUSION

(1) The trial court committed no error in failing to join the corporation as a necessary party; (2) Walliser failed to present any meritorious or germane defenses to the trial court; and (3) Walliser

did not preserve for review the issue of retaliatory eviction because he failed to present to the trial court any evidence or argument on this issue.

For the reasons indicated, the judgment of the circuit court of Will County is affirmed.

Affirmed.

STOUDER and BRESLIN, JJ., concur.