# Supreme Court of the Navajo Nation

---

**George R. Burnside and Mary E. Burnside, Appellants,**

**v.**

**Thriftway Marketing Corporation, Appellee,**

AND

**Thriftway Marketing Corporation, Appellant,**

**v.**

**Raymond Nakai Sr., Appellee.**

**Decided August 17, 1995**

---

## OPINION

Before YAZZIE, Chief Justice, CADMAN and FERGUSON (by designation), Associate Justices.

Michael P. Upshaw, Esq., and Gary Verburg, Esq., Scottsdale, Arizona, for the Appellants; and F.D. Moeller, Esq., Farmington, New Mexico, for the Appellee; and Steven Bunch, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for Amicus Curiae Navajo Nation,

and

F.D. Moeller, Esq., Farmington, New Mexico, for the Appellant; and Douglas A. Jorden, Esq., Phoenix, Arizona, and Daniel Deschinny Sr., Esq., Window Rock, Navajo Nation (Arizona), for the Appellee; and Steven L. Bunch, Esq., Navajo Nation Department of Justice, Window Rock, Navajo Nation (Arizona), for Amicus Curiae Navajo Nation.

Opinion delivered by CADMAN, Associate Justice.

This opinion decides two appeals with similar facts and legal issues. Both appeals are Navajo Nation forcible entry and detainer actions under 16 N.T.C. §§ 1801-1810 (1978).

# I. FACTS

## A. Burnside

The Appellants, George R. and Mary E. Burnside ("Burnside"), are lessees of Navajo Nation trust land. The land is located within the exterior boundaries of the Navajo Nation at the junction of Arizona Highway 264 and U.S. Highway 191 near Ganado, Navajo Nation (Arizona).

On October 19, 1978, the Navajo Nation granted Burnside a fifteen-year business site lease ("Base Lease") with an option to renew for an additional ten years. Paragraph 11 of the Base Lease explicitly provides that any sublease of the leasehold interest is subject to approval by the Navajo Nation and the Secretary of the United States Department of the Interior ("Secretary"), and that any sublease without such approval shall not be valid or binding.

Upon granting the Base Lease, the Navajo Nation also approved a sublease of the property ("Sublease") to the Appellee, Thriftway Marketing Corporation ("Thriftway"). The term of the Sublease was ten years from the date of approval by the Secretary. Approval was granted for both the original Base Lease and the original Sublease on November 14, 1978.

Following approval of the Base Lease and the Sublease, the parties set aside a portion of the four-acre plot to build and operate a convenience store and gas station, called "Burnside's Thriftway."

Anticipating the Sublease's expiration in November, 1988, on June 29, 1988, the parties agreed to extend the Sublease an additional five years (until November 14, 1993). In addition, Burnside granted Thriftway an option to extend the Sublease for two additional five year periods. This purported extension of the Sublease and the option were not approved by the Navajo Nation or the Secretary.

In October 1993, Burnside exercised its option to extend the Base Lease for an additional ten years to November, 2003. On July 1, 1994, Burnside demanded that Thriftway vacate the premises by August 1, 1994. Thriftway did not vacate and affirmatively refused to vacate.

On August 18, 1994, Burnside sued Thriftway under the Navajo Nation forcible entry and detainer statute.

## B. Nakai

On May 4, 1969, the Navajo Nation entered into a Base Lease with the Appellee, Raymond Nakai Sr. ("Nakai") for an approximately three-acre parcel of Navajo Nation trust land at Lukachukai Junction. The leased premises is located within the exterior boundaries of the Navajo Nation. The original term of the Base Lease was twenty-five years, beginning on the date of approval by the Secretary, with an option to renew for an additional twenty-five years. The Base Lease was approved by the Secretary on May 14, 1969.

On June 14, 1978, Nakai entered into the Sublease with Thriftway Marketing Corporation ("Thriftway") for the operation of a gas station and convenience store on one-acre of the parcel leased to Nakai under the Base Lease. It was subject to the terms of the Base Lease. The Sublease was approved by the Secretary on August 11, 1978. Both the Base Lease and the Sublease expired on May 14, 1994.

On June 14, 1994, Nakai exercised his option to renew the Base Lease for an additional twenty-five years and obtained approval from both the Navajo Nation and the Interior Department. However, Nakai did not agree to renew Thriftway's Sublease.

On May 9, 1994, Nakai sent a letter to Thriftway stating that the Sublease would terminate May 14, 1994, and that it would not be renewed. In the letter, Nakai asked Thriftway to vacate the subleased premises by May 14, 1994. Thriftway did not vacate and continues to occupy the property and conduct business operations. On September 26, 1994, Nakai sued Thriftway under the Navajo Nation forcible entry and detainer statute.

## II. FORCIBLE ENTRY AND DETAINER

The threshold issue in these appeals is the proper scope of the Navajo Nation forcible entry and detainer statute. In this consolidated opinion, the Court will define appropriate causes of action under the statute.

Under the Navajo forcible entry and detainer statute, a person is guilty of forcible entry and detainer if he or she willfully "holds over any lands, tenements or other real property after termination of his right to possession thereof." 16 N.T.C. § 1801(a) (2). To regain possession of the real property under subsection 1801(a) (2), a plaintiff lessor must show the following: 1) the defendant's right to possession has terminated; 2) the plaintiff is entitled to possession; and 3) the plaintiff has made a written demand for possession of the premises in dispute.

A forcible entry and detainer action is a summary statutory action to adjudicate possession rights, and it should not be burdened by matters that are not related to the issue of possession. Section 1805(a) states, "on the trial of an action of forcible entry or forcible detainer, the only issue shall be the right of actual possession and the merits of title shall not be inquired into." The statute distinguishes between an action raising the legal question of who "owns" the fee title to the land (e.g., the ancient action in ejectment) and an action determining the legal right of possession. Therefore, the forcible entry and detainer action is designed to determine possessor rights to land, which is any interest other than fee simple title.

Clearly, the scope of the Navajo Nation forcible entry and detainer statute includes causes of action related to possession. For example: 1) actions asserting a superior right of possession; 2) actions regarding the breach of an agreement granting the right of possession to the plaintiff; 3) actions establishing or challenging the validity or enforceability of an agreement on which a right of possession is based; and 4) actions questioning the plaintiff's motivation for bring-

ing the action. *See, People ex rel. Department of Transportation v. Walliser*, 258 Ill. App.3d 782, 788, 629 N.E.2d 1189, 1194 (1994). In addition, the statute is designed to address occupancy by trespass or squatting and other wrongful possession of land.

This Court finds that the claims in both *Burnside* and *Nakai* can properly proceed under the forcible entry and detainer statute.

## III. Burnside v. Thriftway

In Burnside, the Window Rock District Court erred in holding that inquiry into the contract's validity is beyond the scope of a forcible entry and detainer action. The district court improperly refused to analyze the contract's validity by finding that such analysis is a question of the merits of title and not possession. The contract in Burnside does not confer title upon Thriftway for the purposes of an inquiry into the merits of title, but only the right to possess and use land for a period of time. Therefore, the district court erred by not interpreting the contract instruments (i.e., the Base Lease and Sublease) to decide what interest Thriftway had in possession of the land.

Presumably, the district court was relying on the common law notion that ownership is not a proper subject of inquiry because it is beyond the scope of the determination of possession. However, the validity of a lease or sublease may be the very basis upon which a party makes its claim to a right of possession. When a party bases its claim to a right of possession on a lease or sublease, the validity of that lease or subleasease is properly subject to inquiry in an action for forcible entry and detainer.

Given the relevance of the validity of a lease or sublease agreement to a party's claim to a right of possession, it is illogical to interpret the term "title" in section 1805(a) to include sublease estates. It would not make sense for the statute to prohibit inquiry into the very basis upon which a claim to a right of possession is made. "Title," in section 1805(a), can only refer to ownership. Therefore, we hold that section 1805(a) prohibits inquiry into ownership, but does not prohibit inquiry into the validity of a lease or sublease claimed to grant a right of possession. The district court erred in declining to construe the validity of the Sublease in this case.

Generally, a sublease is subject to the limitations, terms, and conditions of the primary leasehold. *See, e.g., Kuykendall v. Tim's Buick, Pontiac, GMC & Toyota, Inc.*, 149 Ariz. 465, 469, 719 P.2d 1081, 1085 (1985); *MAC Enterprises, Inc. v. Del E. Webb Development Co.*, 132 Ariz. 331, 335, 645 P.2d 1245, 1249 (1982). The Base Lease in this case required approval from the Navajo Nation and the Secretary for all subleases. Therefore, because the disputed contract is a sublease, subject to the terms of the Base Lease, it is invalid without the required approval.

Furthermore, 25 U.S.C. § 81 and § 415 require the Secretary's approval of all contracts relating to Indian trust land. Both sections 81 and 415 state that all con-

tracts lacking such approval are "null and void." The Ninth and Tenth circuits have consistently upheld this requirement. *U.S. ex rel. Citizen Band of Potawatomi Indian Tribe of Oklahoma v. Enterprise Mgt. Consultants, Inc.*, 883 F.2d 886 (10th Cir. 1989); *Barona Group of Capitan Grande Band of Mission Indians v. American Management and Amusement, Inc.*, 840 F.2d 1394 (9th Cir. 1987), *cert. denied* 487 U.S. 1247; *A.K. Management Co. v. San Manuel Band of Mission Indians*, 789 F.2d 785 (9th Cir. 1986). Since there was no Secretarial approval of the contract, it is void as a matter of law. We adopt the approval requirement as a matter of Navajo Nation law. Perhaps in the future, as the Nation gains more self-sufficiency, section 81 approval may not be necessary. This is a matter for the Nation and the Federal Government to negotiate.

The terms of the Base Lease also require Navajo Nation approval of the contract. Approval by the Navajo Nation is necessary to ensure that the Nation efficiently and effectively manages Navajo Nation lands.

Burnside was responsible to obtain the required Sublease approval from both the Secretary and the Navajo Nation. Burnside never obtained such necessary approval. It is not important which party was to obtain the Sublease approval. The important issue is whether or not the approval was actually obtained. Irregardless of which party was at fault for not obtaining the necessary approval, the requirement was not met, and the Sublease is invalid. It is beyond the scope of this Court's duty to delve into the relationship between the parties beyond what exists in the documents involved in the case. Both parties share some of the blame for any breakdown in the arrangements between them. This Court's duty is not to apportion blame, but to decide whether the district court acted properly, and to determine who has a right to possess the property.

The Sublease is not valid, it cannot be the basis of any right of possession by Thriftway. No other source of such a right is apparent. Burnside has a right to possess the property under the Base Lease with the Navajo Nation. The record shows that on July 1, 1994, Burnside gave Thriftway notice to vacate the disputed property. Burnside has, therefore, met all of the requirements of a forcible entry and detainer action.

We reverse the Window Rock District Court's decision stating that this case is not a forcible entry and detainer action. The case is remanded to the Window Rock District Court with instructions to enter judgment for Burnside and to order Thriftway to vacate the premises. Failure to comply will result in further action by the district court to enforce its judgment.

## IV. Nakai v. Thriftway

### A. Motion to Dismiss

There is some confusion about the filing of a transcript with the district court and its subsequent submission to the Supreme Court. Rule 9 (b) (4) of the Navajo Rules of Civil Appellate Procedure requires that "the appellant shall file an orig-

inal and one copy of the transcript with the clerk of the district court ..., within the period of time for transmitting the record stated in Rule 9(a)." According to Rule 9(a), the period for transmitting the record to the Supreme Court, including the transcript, is "30 days from the date of filing the Notice of Appeal." NRCAP 9(a) (2). The record shows that Thriftway filed its notice of appeal on December 12, 1994, and the last day for filing the transcript was January 11, 1995. The Chinle District Court did not receive the transcript from Thriftway until February 15, 1995. Subsequently, the Supreme Court received the transcript on March 2, 1995. Thriftway did not timely file the transcript of proceedings.

Thriftway claims that it is not clear in the Rules who is responsible for the timely filing of the trial transcript. Thriftway relies on the language of Rule 9(a) (2) which states that, "the clerk of the district court shall number the items comprising the record, and shall transmit the record to the Supreme Court, together with an appropriate index listing the contents of the record and the number thereof, within 30 days from the date of filing the Notice of Appeal." NRCAP 9(a)(2). Thriftway believes that the clerk of the Chinle District Court was responsible for the timely filing of the transcript, and not it as the appellant. This is an incorrect interpretation of the Rules.

The Rules place the responsibility on the appellant for the timely filing of the trial transcript with the district court. The clerk's job is to transmit the trial transcript to the Supreme Court. Pursuant to Rule 9(b)(4), Thirftway, as the appellant, is responsible for filing an original and one copy of the trial transcript with the clerk of the district court within 30 days from the date of filing the notice of appeal. NRCAP 9(b)(4). The motion to dismiss is denied.

## B. Merits of the Case

The Chinle District Court properly allowed the case to proceed as a forcible entry and detainer action. It found that the interpretation of the Base Lease and the Sublease did not exceed the scope of inquiry in a forcible entry and detainer action. The court further found that interpreting the leases aided the determination of entitlement to actual possession and not the merits of title. The court determined that the Base Lease did not grant the sublessor an automatic extension of the terms of the Sublease upon renewal of the Base Lease. We agree with the district court's interpretation of the Base Lease language and its ruling that the Sublease is void. We affirm the Chinle District Court's decision holding that Nakai effectively terminated Thriftway's tenancy as of May 14, 1994 and that Thriftway has been a tenant at sufferance since May 15, 1994.

This case is remanded to the Chinle District Court for proceedings consistent with this opinion.