362 P.2d 730

**SAN MANUEL COPPER CORPORATION, a Delaware corporation, and Mammoth Livestock, Land & Commercial Company, an Arizona corporation, Appellants,**

v.

**Lee FARRELL and Marian Farrell, husband and wife, Appellees.**

**No. 6754.**

Supreme Court of Arizona.

En Banc.

June 21, 1961.

Rehearing Denied Oct. 3, 1961.

**350**

Guynn, Twitty & Sievwright, Phoenix, for San Manuel Copper Corporation.

Clark & Coker, Phoenix, and Tom Fulbright, Florence, for Mammoth Livestock, Land and Commercial Co., for appellants.

Stokes, Bagnall & Moring, Coolidge, Conner & Jones, and James M. Murphy, Tucson, for appellees.

UDALL, Justice.

This appeal is from a judgment of the superior court awarding appellees (hereinafter referred to as Farrells) $7,500 damages against appellants (hereinafter referred to as San Manuel and Mammoth) for wrongful eviction from approximately 300 acres of farm lands occupied by the Farrells under a sublease dated March 1, 1955. The sublease was executed between Farrells and Mammoth, the latter holding all the lands in question under lease from San Manuel.

Immediately after the execution of the sublease dated March 1, 1955 the Farrells entered into possession of the premises and started to farm the land under the terms of the sublease. Most of what happened from then until the middle of September when the Farrells vacated the premises is vigorously disputed. Since the verdict of the jury was for the Farrells we need only determine whether there was sufficient evidence on the essential and contested points for the case to be submitted to the jury.

The essential points in appellants' argument on evidentiary issues are these:

(1) that one of the basic requirements of the sublease was that it be approved by San Manuel and that there was no evidence in the record from which the jury could be permitted to conclude that San Manuel ever gave its approval of the sublease;

(2) that even if the record supports a finding of San Manuel approval of the sublease the record will not support a finding that Farrells were evicted from the premises;

(3) that even if Farrells were evicted in contravention of a valid sublease the record will not support a finding that San Manuel was in any way responsible for or liable for the eviction;

(4) that there was no evidence that the appellees sustained any damages as a result of their claimed eviction; and finally

(5) that there was no evidence which would support a finding that Farrells were damaged to the extent of $7,500. There were in addition assignments of error relating to the admission of certain evidence and giving and failing to give certain instruction which will be discussed infra.

As to the existence of a valid sublease we think that when viewed in a light most favorable to sustaining the judgment of the trial court the evidence fully supports such finding. Mr. Farrell readily admitted that San Manuel never gave its written consent for the sublease but relies upon a theory of estoppel. We said in Holmes v. Graves, 83 Ariz. 174, 177, 318 P.2d 354, 356:

"Estoppel is quite generally predicated on conduct which induces another to acquiesce in a transaction, and that other, in reliance thereon, alters his position to his prejudice. It has three elements. First, acts inconsistent with the claim afterwards relied on; second, action by the adverse party on the faith of such conduct; third, injury to the adverse party resulting from the repudiation of such conduct. See Kerby v. State, 62 Ariz. 294, 157 P.2d 698. Estoppel will be applied to prevent injustices, Munger v. Boardman, 53 Ariz. 271, 88 P.2d 536, and to transactions in which it would be unconscionable to permit a person to main-

tain a position inconsistent with one in which he has aquiesced. 19 Am.Jur. 676, Estoppel, Section 62."

Mr. Farrell's testimony alone is sufficient to support a finding of estoppel. Much, although not all, of his testimony on this point was corroborated. He testified that at a meeting held with San Manuel's manager on April 15, 1955, the sublease was discussed. The manager knew that the Farrells were in possession and were proceeding with the farming operations. Mr. Farrell's testimony was that at that meeting it was agreed the sublease would be approved and that formal drafting of the approval was to be held up pending a survey to establish an exact description of the premises. He further testified that he was told to go ahead and operate under the sublease and that with full knowledge that he was so doing San Manuel stood by and acquiesced in his expenditure of funds and labor in the farming operation until his eviction in September of that same year. This testimony, which the jury apparently believed, shows acts inconsistent with the subsequent claim of nonconsent to the sublease, action by the Farrells on the faith of the conduct, and injury to the Farrells resulting from the subsequent repudiation of that conduct.

That Farrells were evicted and did not voluntarily abandon the premises is sufficiently supported by Mr. Farrell's testimony that in September Mammoth put 300 head of cattle into the wet fields of growing alfalfa making it impossible to harvest and destroying the ditches which he had improved, asserting all the while that Farrells did not have a valid sublease. Mr. Farrell testified that these acts were the reasons why he vacated the premises.

That San Manuel was a party to the eviction and liable therefor is less clearly supported by the record but such a finding is nonetheless justified under the evidence of the record. It is uncontradicted that in July (long after the Farrells had changed their position in reliance on San Manuel's consent to the sublease) there was a meeting between Mr. Farrell and officers of San Manuel at which Farrell was told that San Manuel did not recognize the sublease as being valid. There is evidence that San Manuel was anxious to terminate their lease to Mammoth because unprofitable and that the rights of the Farrells were an obstacle to the termination. Mr. Farrell testified that an officer of Mammoth gave as a justification for putting the cattle on the land the fact that San Manuel sold Mammoth's lease. In addition there was uncontradicted evidence that San Manuel reaped the benefit of the eviction and ratified it by entering into a profitable agreement dated shortly after the eviction whereby it received a settlement on the large debt owed to it by Mammoth and obtained a release of the Mammoth lease freeing San Manuel to re-lease the property to a more

financially reliable group of tenants which it did in the same transaction.

This course of dealing, from the disavowal of the rights of the Farrells in July to the acquiescence in the evictive acts of Mammoth to the overt ratification of the eviction by reaping the benefits thereof, constitutes sufficient evidence from which the jury could properly conclude that San Manuel was in fact a party with Mammoth in the eviction of the Farrells. San Manuel does not deny that it reaped the benefits of the eviction by putting new tenants into possession by executing a lease while the Farrells had nearly a year left to run on their sublease. They do not deny that they accepted rent from the new lessees who, under the new lease, were farming the property which the Farrells had a right to farm for a year from the time of eviction. They only seek to excuse it by denying the validity of the sublease and by pointing out a clause in the new lease they executed with the new tenants to the effect that it was subject to the rights of the Farrells "if any." In light of the fact that San Manuel denied any rights in the Farrells and accepted rent from the new lessees who took over the land and equipment to which the Farrells were entitled under the sublease the clause was meaningless and can in no way exculpate San Manuel from liability for the eviction.

■ We think the claim that the Farrells suffered no damages from the eviction is without merit. There is ample evidence that the farm lands being used by the Farrells were made unsuitable for further agricultural uses during the balance of 1955 and that the growing crops then on the premises were almost completely destroyed.

■ Turning to the more technical assignments of error not related to the sufficiency of the evidence we consider the argument that plaintiffs' exhibits 7 and 8 were improperly admitted. One exhibit shows the agreement terminating Mammoth's lease and the other shows the new lease executed between San Manuel and Mauldin, Mercer and Rhodes. These exhibits were admissible to show the relationship of San Manuel to the eviction of the Farrells as discussed supra. They are relevant to show the course of dealing and that San Manuel ratified the eviction by reaping the benefits thereof to the extent of $1,388.88 cash rent from the new lessees for the remainder of 1955 in addition to other benefits. Taken together these exhibits tend to show a plan or design of San Manuel to rid itself of an unprofitable lease to Mammoth along with the sublease to Farrells and to substitute in its place a new contract with financially responsible parties. When so viewed they have sufficient probative value that the court did not commit error in permitting the jury to consider them in connection with all the other facts and circumstances in the case.

**354**

The final matters to be considered all related to the giving of plaintiffs' requested instruction No. 5, which as given reads as follows:

> "You are instructed that an evicted tenant is entitled to compensatory damages for pecuniary losses naturally and proximately resulting from the eviction including loss of time, conversion, loss of or injury to personal property, for the value of labor performed in preparing the land for crops and for the value of pasturage."

■ The general rule of damages for wrongful eviction is the actual or market value of the unexpired term as of the time of eviction plus whatever other loss the lessee may have incurred as a direct and natural consequence of the wrongful eviction less the agreed rent. Landon v. Hill, 136 Cal.App. 560, 29 P.2d 281; McElvaney v. Smith, 76 Ark. 468, 88 S.W. 981; 32 Am.Jur. (Landlord & Tenant) § 265; 52 C.J.S. Landlord & Tenant § 461 b(3).

■ While plaintiffs' instruction No. 5 was intended to cover the latter part of the general rule it includes one item which is included in the first part relating to the value of the lease and covered in defendant's instruction No. 8. The value of labor performed in preparing land for crops is an element of the value of the remainder of the term of the lease. The inclusion of this element in the contested instruction would permit the jury to include this element twice and was therefore error.

What elements go in to making up the value of the remainder of the term of a lease are as many and varied as leases are many and varied. What elements should be considered in determining the value of the remainder of the term in the instant case must abide the event of the new trial on the issue of damages, governed and controlled, of course, by the pleadings in the action. We cannot and should not attempt to anticipate what proof the plaintiffs may be able to offer. For cases dealing with somewhat analogous situations, see County of Maricopa v. Shell Oil Co., 84 Ariz. 325, 327 P.2d 1005; Pacific Guano Co. v. Ellis, 83 Ariz. 12, 315 P.2d 866; State ex rel. Morrison v. Carlson, 83 Ariz. 363, 321 P.2d 1025. The question of consequential damages offers an equally wide range of possible proof and must likewise abide the event of a new trial.

For the reasons given in this opinion the judgment of the trial court is affirmed as to the liability of both defendants for wrongful eviction and reversed and remanded with instructions to grant a new trial on the issue of damages only.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and JENNINGS and LOCKWOOD, JJ., concur.