421 P.2d 890

Herman J. CHADWICK and Alice Chadwick, his wife, Appellants,

v.

George R. WINN, George Sorenson and Jack C. Cavness, Appellees.

No. 7963.

Supreme Court of Arizona.

In Banc.

Dec. 22, 1966.

Kramer, Roche, Burch & Streich, Charles L. Hardy, Phoenix, for appellants.

Joe W. Contreras and Tom C. Foster, Phoenix, for appellees.

UDALL, Justice.

In September, 1959 George Winn entered into a lease agreement with Herman and Alice Chadwick, as lessors, whereby Winn became the lessee of a lot located at 1300 E. Camelback in the city of Phoenix. The lease was for a term of nine years, commencing on September 1, 1959 at a rental of $600 per month payable on the first day of each month.

The lease agreement provided that upon the nonpayment of the rent, when due on the first day of the month, the lessors at their election could declare the lease at an end and recover possession as if the premises were held by forcible detainer. By the terms of the agreement the lessee waived any notice of the lessor's election and also waived the necessity of a demand for possession of the premises.

From September, 1959 through October, 1960 George Winn paid the monthly rental of $600, and the lessor, Herman Chadwick, accepted the full amount of the rent each month. Winn paid the rent in cash on

several occasions, and he paid by check on the following dates: in 1959, on September 2, October 8, and December 1; in 1960, on February 3 and on April 15. The exact dates of the cash payments were not established in the lower court. Winn testified that he was late in paying the rent, whether by check or cash, approximately two-thirds of the time, and although Chadwick acknowledged having accepted late payments in order to accommodate Winn, he was unable to estimate the number of times the rent had been paid and accepted late.

In September of 1960 Winn assigned a two-thirds undivided interest in the term to the plaintiffs George Sorenson and Jack Cavness, receiving $3,300.00 for the interest transferred. In October and November, 1960, Chadwick, who was aware that Sorenson and Cavness had acquired an interest in Winn's lease, accepted the $600 monthly rentals which were paid in part by checks drawn by George Sorenson. Neither party questioned the validity of the assignment in the trial court or on this appeal.

In December, 1960 the rent was again not paid on the first of the month. According to Winn's testimony he met Chadwick at Herb Stevens Motor Co. between the 5th and 8th of December, and during the course of a conversation Chadwick consented to a further delay when Winn told him "that I would have the rental payment for him in a couple of days." Chadwick testified that the subject of rent was not discussed or mentioned during the conversation.

On December 16th Chadwick, by means of a letter from his attorney to Winn, advised the lessee that Chadwick had elected to terminate the lease as of the 12th of December. After receiving the letter Winn tendered the rent due, but it was refused by Chadwick.

On December 16th Winn, Sorenson and Cavness commenced this action to recover damages for wrongful termination of the lease by Chadwick.

Plaintiffs based their claim for damages on the ground that defendant's acceptance of late rental payments on various occasions during the period from September, 1959 through November, 1960, constituted a waiver of his rights to declare the lease at an end, and, without giving notice or demand, to retake possession of the premises. Plaintiffs argued that under the circumstances as they existed in December, 1960, defendant was required to make a demand for the rent due in order to reinstate those provisions of the lease which gave him an unqualified right to declare a forfeiture for nonpayment of rent.

In the trial court defendant contended that acceptance of late rent did not have the cumulative effect of waiver of forfeiture rights, that defendant had, in November of 1960, verbally demanded prompt payment of the December rent, and, even assuming that defendant had given Winn an extension of a couple days in December, during his conversation with Winn at Herb Stevens Motor Co., defendant had in fact waited a few days before declaring the forfeiture on December 12th.

The cause was tried in superior court without a jury, and a judgment was rendered in favor of the plaintiffs for $32,000.-00. From the judgment and denial of his motion for a new trial defendant takes this appeal.

In his first assignment of error defendant claims the trial court erred in entering judgment for the plaintiffs and in denying defendant's motion for a new trial because there was no evidence that defendant acquiesced in the late payment of rent for a sufficient length of time or under circumstances which established a course of dealing upon which the plaintiffs had a right to rely.

We find it unnecessary to determine whether the acceptance of late rental payments had the cumulative effect, as far as the defendant was concerned, of waiver of his right to declare a forfeiture without demand or notice. We think that the trial court could have found from the evi-

dence that the defendant waived timely payment of the December rental and that this waiver alone was sufficient to preclude defendant from declaring a forfeiture without first making a demand for the rent due.

▆ No findings of fact were made by the trial court, and we must presume that the court found every controverted issue of fact, necessary to sustain the judgment, in favor of the prevailing parties; the evidence will be viewed in the strongest light in favor of appellees, and if there is reasonable evidence to support the judgment it must be sustained. Kellogg v. Bowen, 85 Ariz. 304, 337 P.2d 628.

▆ Applying the above principles to the record before us, we assume that the trial court, which had before it the undisputed evidence of defendant's past leniency and which had an opportunity to judge the credibility of the parties, found that the defendant did, in his conversation with Winn at Herb Stevens Motor Co., sometime between the 5th and the 8th of December, grant an extension of at least two days, at a time when the December rental was several days in arrears.

▆ We have held, in Wahlstrom v. Christy, 20 Ariz. 331, at 333, 180 P. 528, at 529, that " '[a]ny act of the lessor done with the knowledge of a cause of forfeiture by the lessee affirming the existence of the lease and recognizing the lessee as his tenant is a waiver of such forfeiture. And inasmuch as forfeitures are not favored, slight acts will be construed as a waiver of the forfeiture.' "

▆ When defendant granted the extension he waived his right of forfeiture, at least temporarily. The question is, was he then required to demand the rent and give Winn an opportunity to pay, notwithstanding the terms of the lease by which the lessee waived any demand or notice of the lessor's election to end the lease for nonpayment of rent.

We think that under the circumstances the defendant was required to make a demand and afford Winn a reasonable opportunity to tender the December rental payment. The law does not favor forfeitures and it cannot condone a lessor's conduct which has put a tenant off guard and has tended to lead him into circumstances in which his interest can be forfeited by the lessor. In such a case, notwithstanding the provisions of the lease, reason and justice require that the lessor demand that the rent be paid before exercising a right of forfeiture. Donovan v. Murphy, 217 Ill.App. 31 (1920). Since defendant did not make a demand and did not give Winn an opportunity to pay, it follows that the trial court did not err when it determined that defendant wrongfully terminated the lease.

In his second assignment of error defendant contends that even if the forfeiture is found to be wrongful as to Winn, still it is valid as against the assignees Sorenson and Cavness. In support of this contention defendant refers to the case of Stephenson v. National Bank of Winter Haven, 39 F.2d 16, (5 Cir. 1930), which allegedly stands for the proposition that a course of dealing with a tenant in accepting late rent does not constitute a waiver by the lessor of a right of forfeiture against the tenant's assignee.

In the Stephenson case the lessor had accepted one late payment of rent from the original tenant. In allowing the lessor to declare a forfeiture against an assignee of the *entire* interest of the original tenant, the court stated that by his acceptance of one late payment from the original tenant, the lessor did not waive his right to forfeit the lease as against the assignee for the latter's failure to make a timely payment of rent after the assignment.

▆ We cannot view the Stephenson case as authority for the proposition urged upon us by the defendant, that a forfeiture exercised by the lessor can be wrongful as to an undivided one-third interest in the original tenant and at the same time valid as to a two-thirds undivided interest held by assignees. The defendant has not

cited other authority to support his contention, and since we find none, we think that the forfeiture, which clearly terminated the rights of the assignees as well as those of the original tenant Winn, was wrongful as to all of the plaintiffs.

In his third assignment of error defendant claims that the trial court erred in awarding plaintiffs the sum of $32,000 because there was no substantial evidence to sustain the judgment.

■ In seeking to recover damages for the eviction, plaintiffs relied upon the following rule approved by this Court in San Manuel Copper Corporation v. Farrell, 89 Ariz. 349 at 354, 362 P.2d 730, at 733:

> "The general rule of damages for wrongful eviction is the actual or market value of the unexpired term as of the time of eviction plus whatever other loss the lessee may have incurred as a direct and natural consequence of the wrongful eviction less the agreed rent. * * *"

Both parties assumed that "actual or market value of the unexpired term" meant that sum of money for which the plaintiffs could have sold the term on the market; plaintiffs offered expert testimony of an appraiser to establish that had they not been evicted they could have realized a net profit of $32,000 by subleasing for the remainder of the term. The defendant attempted to prove, by the testimony of his expert, that plaintiffs' sublease rental profit would have been considerably less than $32,000.

■ We have extensively reviewed the conflicting evidence in this case. It would serve no useful purpose for us to go into great detail in indicating the nature of the evidence. In this respect it is sufficient to note that plaintiffs' expert witness, John Boyle, who was qualified as an appraiser, based his opinion of rental value primarily upon a determination of what an adjacent piece of property rented for at the time plaintiffs were evicted from their lot. In addition the trial court heard testimony of several witnesses to the effect that the plaintiff Winn had placed about $8,000 worth of improvements upon the used car lot. In opposition to plaintiffs' evidence defendant offered testimony as to the sale price of other pieces of property which had the same zoning as plaintiffs' lot. Also, the trial court had before it evidence of the assignment of a two-thirds interest in the lot, made from Winn to Sorenson and Cavness for $3,300.00.

As to the testimony of plaintiffs' expert, defendant claims that it is insufficient because the lots compared were not comparable and because the front foot rental value of other similar property is not a proper standard to use in proving the rental value of plaintiffs' lot. We cannot agree with these contentions. There is sufficient evidence from which the trial judge could have found that the lots were comparable; both were in the same location, the front footage measurement of both was comparable, with the corner lot being 132 feet and plaintiffs' lot 106 feet; and both had the same highest and best use as a used car lot. As for the question of determining rental value by showing front foot rental value of other similar property, this issue is resolved in favor of plaintiffs by our decision in State ex rel. Morrison v. Jay Six Cattle Co., 88 Ariz. 97, 353 P.2d 185, in which we held that evidence of the front foot *sale* price of other similar land was relevant and admissible on the issue of market value. We see no reason why evidence of front foot *rental* price of similar property should not be equally relevant and admissible when the issue is market rental value of a given piece of property.

■ Having reviewed the evidence in its entirety, we think that the trial judge was simply confronted with a choice between sharply conflicting evidence on the question of market value. He might reasonably have accepted the proof of either party, and this fact precludes us from reversing his judgment, for this Court has consistently held that it will not disturb the findings and judgment of a trial court,

**538**

sitting with or without a jury, where the evidence is conflicting and where it is sufficient to sustain the judgment which was rendered. Kingsbery v. Kingsbery, 93 Ariz. 217, 379 P.2d 893; Winterton v. Lannon, 85 Ariz. 21, 330 P.2d 987; Anglin v. Nichols, 80 Ariz. 346, 297 P.2d 932.

In view of the foregoing, the judgment in favor of plaintiffs is affirmed.

STRUCKMEYER, C. J., BERNSTEIN, V. C. J., and LOCKWOOD and McFARLAND, JJ., concur.