NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DBT YUMA LLC, et al.[1]
*Plaintiffs/Appellants*,

*v.*

YUMA COUNTY AIRPORT AUTHORITY,
*Defendant/Appellee.*

No. 1 CA-CV 17-0735
FILED 2-5-2019

Appeal from the Superior Court in Yuma County
No. S1400CV201001309
The Honorable John P. Plante, Judge

**AFFIRMED**

COUNSEL

Williams, Mestaz, LLP, Phoenix
By Daryl M. Williams
*Counsel for Plaintiffs/Appellants*

---

[1]     On the court's own motion, it is ordered amending the caption in this matter as reflected in this decision.  The above-referenced caption shall be used on all further documents filed in this matter.

Kutak Rock, LLP, Scottsdale
By Paul S. Gerding, Jr., Marc R. Lieberman, Michael W. Sillyman
*Co-Counsel for Defendant/Appellee*

Benesch & Davy, PC, Yuma
By Wayne C. Benesch
*Co-Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Michael J. Brown and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

**¶1**　　　　DBT Yuma, LLC, et al. appeal the superior court's judgment in favor of the Yuma County Airport Authority ("YCAA") following a bench trial on various contract claims and cross-claims. For the following reasons, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**　　　　YCAA operates the Yuma County airport. Beginning in mid-2008, YCAA entered into four leases with DBT Yuma, LLC, and other companies collectively doing business as Lux Air. The leases authorized Lux Air to use space at the airport to run a fixed-base-operator business refueling airplanes.

**¶3**　　　　Under the leases, Lux Air had to pay monthly rent and fuel-flowage fees. Each lease also provided:

> [YCAA] may cancel this Agreement, at any time, in the event [Lux Air] shall:
>
> A). Be in arrears in the payment of the whole or any part of the rent, fees and/or charges due hereunder for a period of ten (10) days after [Lux Air's] receipt of written notice from [YCAA] of the failure.

**¶4**　　　　On appeal, Lux Air concedes it was "never current [and] was late 86% of the time" on its payments under the leases. On September 4,

2009, Craig Williams, YCAA airport director, delivered a letter to Tim Berger, Lux Air's managing partner, that stated in relevant part:

> I am very concerned because Lux Air is seriously delinquent in its obligations to [YCAA] under the terms of the [leases] . . . . I have enclosed an accounting of the delinquent balances to this letter.
>
> My Board of Directors is also very concerned because under the [leases], [YCAA] is entitled to terminate the [leases], in the event [Lux Air] is in arrears in the payment of the whole or any part of the rent, fees and/or charges due under the [leases] for a period of ten (10) days after [Lux Air's] receipt of written notice from [YCAA] of the failure.
>
> Accordingly, this letter is to formally give Lux Air notice of its failure to make payments as more particularly described [on an attachment listing delinquencies].
>
>         *       *       *
>
> [YCAA] is prepared to extend the ten (10) day cure period until October 1, 2009, upon the following terms and conditions:
>
> 1. Payment of the sum of . . . ($20,001.21) to [YCAA] before the close of business on Friday, September 4, 2009.
>
> 2. The payment of the sum of . . . ($20,001.21) as additional rental on or before October 1, 2009, together with the payment of an additional sum of . . . ($10,000.00) as a reduction of the obligations set forth [on the attachment]. This additional payment to continue each month until all financial obligations are current.
>
> 3. Payment in full of all fuel flowage payments due at the time required in the above referenced four (4) leases.
>
>         *       *       *
>
> 5. In the event Lux Air fails to meet any of the terms or conditions set forth herein, [YCAA] may immediately proceed to exercise all of its remedies under the [leases],

without further notice to Lux Air, notice having been given by this letter.

As we discussed, if you agree to the above stated terms and conditions, please sign below indicating the concurrence of Lux Air and the cure period will be considered extended until October 1, 2009. If you do not sign and return this letter indicating Lux Air's concurrence by the close of business on Friday, September 4, 2009, this shall be considered your ten (10) day notice under the terms of the [leases]. Tim, I hope this extra time will help you reach your goals and close the bond issue that your team has been working on so diligently. But beyond this I cannot go.

¶5 Berger returned the signed letter on September 8, the next business day after September 4. Lux Air made its next fuel flowage payment on time in compliance with condition three of the letter, but failed to pay rent on October 1 as required by condition two. On October 23, YCAA terminated the leases and evicted Lux Air from the airport.

¶6 Lux Air sued YCAA, alleging breach of the lease agreement and breach of the covenant of good faith and fair dealing. YCAA filed a counterclaim alleging breach of contract and breach of the covenant of good faith and fair dealing. The superior court held a 27-day bench trial, after which it found Lux Air materially breached the leases, the September 4 letter was effective as a notice of default and no further notice of default was required, YCAA did not waive any of Lux Air's breaches, and YCAA had the right to evict Lux Air due to Lux Air's material breach. The court awarded $998,516 in damages to YCAA, plus $701,040.61 in prejudgment interest, $2,580,689.77 in attorney's fees and $625,311.95 in costs, along with prejudgment interest.

¶7 The court entered judgment pursuant to Arizona Rule of Civil Procedure 54(c), and Lux Air timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2019) and -2101(A)(1) (2019).[2]

---

[2] Absent material revision after the relevant date, we cite the current version of a statute or rule.

## DISCUSSION

### A.      Standard of Review.

**¶8**           In reviewing a judgment entered after a bench trial, "[w]e will not set aside the . . . court's findings of fact unless clearly erroneous, giving due regard to the opportunity of the court to judge the credibility of witnesses." *In re Estate of Zaritsky*, 198 Ariz. 599, 601, ¶ 5 (App. 2000). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003). "We are not bound by the trial court's conclusions of law and are free to draw our own conclusions of law from the facts found by the trial court." *Ariz. Bd. of Regents v. Phoenix Newspapers, Inc.*, 167 Ariz. 254, 257 (1991). We review the record "in the light most favorable to sustaining the trial court's ruling." *Swichtenberg v. Brimer*, 171 Ariz. 77, 82 (App. 1991).

### B.      Extension of Cure Period.

**¶9**           As noted, each of the leases granted YCAA the power to cancel if Lux Air failed to cure a breach after ten days' written notice. The September 4 letter listed Lux Air's existing breaches and cited the cancellation provision but did not demand that Lux Air cure the breaches within ten days. Instead, YCAA stated that it was "prepared to extend the ten (10) day cure period until October 1, 2009," upon specified conditions. The letter continued, "if you agree to the above stated terms and conditions, please sign below indicating the concurrence of Lux Air and the cure period will be considered extended until October 1, 2009." Further, the letter stated that if Lux Air did not "sign and return" the letter by the close of business on September 4, "this shall be considered your ten (10) day notice under the terms of the" leases. The superior court found that Berger's signature bound Lux Air to the terms of the September 4 letter, under which Lux Air had until October 1 to cure or face cancellation.

**¶10**           Whether an agreement has been created is a question of fact. *AROK Const. Co. v. Indian Const. Servs.*, 174 Ariz. 291, 295 (App. 1993). Although an acceptance must comply with the requirements of the offer, "inconsequential variations [in the acceptance] . . . may be within the scope of the offer." *See* Restatement (Second) of Contracts § 58, cmt. a (1981). Generally, we favor enforcing agreements "when it is clear that the parties intended themselves to be bound." *AROK*, 174 Ariz. at 297. Under Arizona's "realist view" of contracts, "[i]f the parties have concluded a transaction in which it appears that they intend to make a contract, the court

should not frustrate their intention if it is possible to reach a fair and just result." *Id.* (quotation omitted).

¶11 Lux Air argues it failed to strictly comply with the September 4 deadline to sign and return the letter and also did not strictly comply with the letter's requirement that it pay $20,001.21 in rent by close of business on September 4. Instead, Lux Air returned the signed letter the next business day after September 4 and the payment it made was short of the stated amount by $580.74. Lux Air argues that signing and returning the letter no later than September 4 and making a rent payment of $20,001.21 were conditions of its acceptance, and when it failed to sign and return the letter on time and failed to pay the precise amount demanded, it did not satisfy those conditions.

¶12 The superior court did not err by finding that Lux Air accepted YCAA's offer to extend the deadline to October 1. Although Berger did not return the letter on September 4 as the letter required, Lux Air's conduct – Berger signed and returned the letter the next business day, along with a payment that was barely short of the required amount – shows it intended to be bound by the terms of the letter. From YCAA's perspective, Lux Air's variation in acceptance was inconsequential because, as Williams testified, the amount Lux Air paid was "good enough" and a "good faith effort on their part to meet that requirement, so . . . I accepted that amount at that time and . . . extended the cure period to October the 1st." Both parties' subsequent conduct further supports the superior court's finding: Lux Air made its next fuel flowage payment on time, as the letter required, and YCAA did not declare a default until after Lux Air missed the payments due under the letter agreement on October 1. Although Lux Air points out that the court found that Berger failed to appreciate the significance of the letter, that does not undermine his assent on behalf of Lux Air to the letter's terms. *See Hill-Shafer P'ship v. Chilson Family Tr.*, 165 Ariz. 469, 474 (1990) ("[M]utual assent is based on objective evidence, not on the hidden intent of the parties.").

## C. Materiality of the Breach.

¶13 Lux Air next challenges the superior court's finding that it materially breached by failing to make the October 1 rent payment on time.

¶14 When it comes to commercial leases, a "landlord's right to terminate is not unlimited," and a "court's decision to permit termination must be tempered by notions of equity and common sense." *Foundation Dev. Corp. v. Loehmann's, Inc.*, 163 Ariz. 438, 446 (1990). A landlord may

terminate a lease only for a material, non-trivial breach. *Id.* at 445-46. The *Loemann's* court held that in determining whether such a breach has occurred, the factfinder must consider the following five factors:

(a) the extent to which the injured party will be deprived of the benefit which [it] reasonably expected;

(b) the extent to which the injured party can be adequately compensated [by damages] for the part of that benefit of which [it] will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure [its] failure, taking account of all the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* at 446-47 (quoting Restatement (Second) of Contracts § 241 (1981)).

¶15        The record shows the superior court applied both equity and common sense, as instructed by *Loehmann's*, in concluding that Lux Air's breach was material. Lux Air does not argue the superior court's findings of fact on this issue are unsupported by substantial evidence. Instead, it argues we should review *de novo* the court's finding that Lux Air committed a material breach. Without meaning to imply that we would come to a different outcome than the superior court on *de novo* review, we note that, on a record such as this, whether a breach is material is a question of fact, and we will affirm the superior court's finding if it is supported by substantial evidence. *See Maleki v. Desert Palms Prof'l Props., L.L.C.*, 222 Ariz. 327, 333, ¶ 27 (App. 2009) ("the record contains substantial evidence that [appellee] did not materially breach the lease").

¶16        Substantial evidence supports the superior court's finding that Lux Air materially breached the leases, thereby permitting YCAA to cancel after October 1. The September 4 letter listed Lux Air's arrearages – unpaid lease deposits from January 2009, unpaid rent from August and September 2009, unpaid fuel flowage fees from August and other charges – all of which totaled $55,935.32. Condition two of the letter required that, by October 1, Lux Air pay $20,001.21 for that month's rent and $10,000 toward

reducing the outstanding arrearages. There is no dispute that Lux Air failed to pay these amounts (totaling $30,001.21) by October 1. This breach by Lux Air gave YCAA the right to terminate the leases "without further notice" as provided by the September 4 letter.

**¶17** The record also shows that Lux Air failed to provide reasonable assurances to YCAA that, having materially breached the leases, it would cure its breaches: Williams testified that, as referenced in the September 4 letter, Lux Air had told him it needed to obtain bond financing to allow it to continue to pay its monthly obligations. Based on Berger's assurances in a September 9 email, Williams believed that Lux Air was "very close to finalizing all the details on [its] bond financing." But on October 19, Berger admitted to Williams that Lux Air did not have "a deal in hand on the financing." The record therefore supports the superior court's finding that "[t]he excuses given convinced YCAA that Lux Air probably lacked the ability to go forward as a going concern."

**¶18** Lux Air argues the superior court erred in weighing the equities by ruling that Lux Air was required to tender performance after YCAA canceled the leases. Tender "is an offer to perform a contract, or to pay money, coupled with a present ability to do the act." *Somerton State Bank v. Maxey*, 22 Ariz. 365, 369 (1921) (quotation omitted). According to Lux Air, tender was unnecessary as a matter of law because YCAA's cancelation of the leases was irrevocable.

**¶19** Contrary to Lux Air's contention, the superior court did not rule that Lux Air should have tendered performance. It only found that Lux Air "knew or should have known" that it could have cured the default by tendering payment, but failed to do so. It further found that if Lux Air had properly tendered payment on or before October 26, 2009, YCAA "would have been bound by equity to accept" it. In any event, when tender otherwise may be required, it is excused only "where it is clear that the other party will not accept it." *Kammert Bros. Enters., Inc. v. Tanque Verde Plaza Co.*, 102 Ariz. 301, 306 (1967) (tender excused when seller "positively refused [buyer's] offer to perform its duties under the contract"). Lux Air points to no such evidence in the record here. *See also Ceizyk v. Goar Serv. & Supply, Inc.*, 21 Ariz. App. 119, 122 (1973) (tender not excused because sellers of land never indicated to the buyer a positive refusal to perform).

**¶20** Lux Air argues that some of the *Loehmann's* factors weigh in its favor: As the superior court found, Lux Air had the ability to pay, the termination was a "crushing blow" to the company that left it "with no sources of income and much debt," and the "termination prevented Lux Air

from realizing large profits."  At the same time, however, as the superior court found, Lux Air was at fault because Lux Air deliberately gave YCAA the "mistaken impression" that it needed to complete the bond deal to allow it to continue to perform its obligations under the leases.

**¶21**          A landlord that has given proper notice is entitled to demand that a tenant pay rent in a timely fashion, and the record shows that after Lux Air failed to make the payments due on October 1, it did not try to show YCAA that it could come up with the money it owed.  As the superior court found, Lux Air "recklessly failed" to pay, when it should have known that payment was required to avoid termination.  In reviewing findings of fact, "we do not substitute our judgment" for that of the superior court if substantial evidence supports the court's decision.  *Great W. Bank v. LJC Dev., LLC*, 238 Ariz. 470, 478, ¶ 22 (App. 2015).  This is so even when, as here, the record also contains substantial conflicting evidence.  *See Kocher*, 206 Ariz. at 482, ¶ 9.

**D.      Purported Waiver of Power to Evict.**

**¶22**          Lux Air also argues YCAA waived the right to cancel the leases by taking actions that were "inconsistent with the intention of enforcing a forfeiture."

**¶23**          In *Chadwick v. Winn*, 101 Ariz. 533 (1966), the supreme court acknowledged that, by its conduct, a landlord may waive the right to declare a forfeiture.  In that case, a tenant who had been persistently late in paying rent testified he told the landlord he would pay "in a couple of days," and the landlord consented.  *Id.* at 535.  Several days went by, and after the tenant still had not paid, the landlord terminated the lease.  *Id.*  The tenant sued and prevailed.  *Id.*  The supreme court affirmed, reasoning that any

> act of the lessor done with the knowledge of a cause of forfeiture by the lessee affirming the existence of the lease and recognizing the lessee as his tenant is a waiver of such forfeiture.  And inasmuch as forfeitures are not favored, slight acts will be construed as a waiver of the forfeiture.

*Id.* at 536.  The court reasoned that because the landlord had granted the tenant an extension, he temporarily waived his right to declare a forfeiture by putting the tenant "off guard"; before canceling the lease, the landlord needed to make a demand and give the tenant a reasonable opportunity to pay.  *Id.  See also Kammert Bros.*, 102 Ariz. at 305 ("Once strict performance of the contract has been waived as to timely payment, a clear and definite

notice to buyer followed by allowance of a reasonable time to bring payments up to date would be necessary in order to reinstate the forfeiture clause of the contract.").

**¶24**        Relying on *Kammert Bros.* and on the "slight acts" language of *Chadwick*, Lux Air argues YCAA waived its right to cancel the leases by, among other actions, accepting payments, approving a sewer abandonment project and communicating with Lux Air employees without informing them that YCAA had decided to evict Lux Air after it failed to pay the rent on October 1.  The superior court fully considered this argument, but found that "YCAA's acceptance from Lux Air of the rent payment and later the fuel flowage payment after the September 4, 2009 letter was sent did not constitute a waiver."  Furthermore, the court found that "[u]pon missing the October 1, 2009 payment, proper notice having been given, YCAA had the right to terminate the lease" and that "[n]o actions of YCAA could reasonably have led Lux Air officials to believe an extension of the requirement to pay the sums required under the September 4, 2009 letter was granted."

**¶25**        Substantial evidence supports the superior court's finding that YCAA did not waive its right to terminate the leases upon Lux Air's failure to comply with the terms of the September 4 letter.  *See Chaney Bldg. Co., Inc. v. Sunnyside School Dist. No. 12*, 147 Ariz. 270, 273 (App. 1985) (whether party waived contractual notice requirement is a question for trier of fact).  *Kammert Bros.* and *Chadwick* teach that a party must put the other on plain notice that it will declare a forfeiture upon the other's breach.  Here, and unlike in those cases, YCAA's September 4 letter did just that, formally alerting Lux Air that "[i]n the event Lux Air fails to meet any of the terms or conditions set forth herein, [YCAA] may immediately proceed to exercise all of its remedies [including termination] under the [leases] without further notice to Lux Air, notice having been given by this letter."  *See Kammert Bros.*, 102 Ariz. at 305; *Chadwick*, 101 Ariz. at 536.

**¶26**        Lux Air's contention that YCAA waived its right to cancel by accepting the interim payments required by the September 4 letter and approving the sewer project is misplaced.  In the September 4 letter, the parties agreed that Lux Air would make certain interim payments due before October 1 and would pay rent due on October 1.  When Lux Air began to perform its obligations under that agreement by making the interim payments, YCAA was entitled to accept that performance in accordance with the September 4 letter.  Further, the superior court thoroughly reviewed YCAA's actions after October 1 and its interactions with Lux Air and found that nothing "could reasonably have led Lux Air

officials to believe" that YCAA had agreed to extend the October 1 deadline. "[G]iving due regard to the opportunity of the [superior] court to judge the credibility of witnesses," we conclude that substantial evidence supports the superior court's findings. *See Zaritsky*, 198 Ariz. at 601, ¶ 5.

## E.     Purported Breach of Covenant of Good Faith and Fair Dealing.

**¶27**          Lux Air further contends the superior court erred when it ruled that YCAA did not breach the covenant of good faith and fair dealing. Lux Air argues YCAA acted in bad faith when it "secretly" planned "behind the back of its tenant to forfeit the tenant because it ha[d] changed its mind about its revenue plan and want[ed] millions of dollars out of the FAA it could not otherwise get."

**¶28**          Arizona law implies in every contract a covenant of good faith and fair dealing that "prohibits a party from doing anything to prevent other parties to the contract from receiving the benefits and entitlements of the agreement." *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 490, ¶ 59 (2002).

**¶29**          The superior court thoroughly reviewed evidence of YCAA's actions before finding that YCAA did not breach the covenant of good faith and fair dealing. Although Lux Air asserts we should review the alleged breach *de novo*, "[w]hether a party has breached the covenant of good faith and fair dealing is a question of fact." *Maleki*, 222 Ariz. at 333, ¶ 28.

**¶30**          Substantial evidence supports the court's finding. Lux Air's long history of delinquent payments justified YCAA's decision to develop a contingency plan in case Lux Air shut down or otherwise failed to perform on the September 4 letter agreement. As the superior court correctly concluded, YCAA "had a right to take steps to ensure that the airport could carry on fueling and other essential functions of the airport once the leases were actually terminated." In fact, the law imposes a "duty upon the [party] injured to exercise reasonable care to mitigate the injury, according to the opportunities that may fairly be or appear to be within [its] reach." *S. A. Gerrard Co. v. Fricker*, 42 Ariz. 503, 508 (1933). Based on weeks of testimony, the superior court did not err in concluding that "Lux Air failed to prove that any actions by Craig Williams or Gerald Hinkle Jr. [YCAA's chief financial officer] were deceptive or unfair." Moreover, although Lux Air objects to YCAA's delay in terminating the lease after the October 1 breach, it failed to prove it suffered any prejudice as a result of YCAA's delay.

¶31        As noted, YCAA also provided Lux Air with notice and a reasonable opportunity to cure in compliance with *Chadwick* and *Kammert Bros.* before evicting Lux Air for its material breach as permitted under the leases. Such "[a]cts in accord with the terms of one's contract cannot *without more* be equated with bad faith." *Wells Fargo*, 201 Ariz. at 492, ¶ 65. Lux Air contends that YCAA's so-called bad faith conduct continued after the eviction and during this litigation. But any actions occurring after the eviction cannot constitute actionable bad faith because a material breach by one party relieves the other party from performance and discharges it from the contract. *Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 133, ¶ 33 (App. 2012).

F.       **Costs Award.**

¶32        The superior court awarded YCAA costs of $625,311.95. In its opening brief on appeal, Lux Air argues that $575,150.60 of the award represented costs not allowed under A.R.S. § 12-332(A) (2019). In its reply, Lux Air also argues that YCAA did not provide evidentiary support for the costs.

¶33        The court must award taxable costs to the successful party in a civil action. A.R.S. § 12-341 (2019). "Whether a particular expenditure qualifies as a taxable cost is a question of law that we review *de novo*." *Reyes v. Frank's Serv. & Trucking, LLC*, 235 Ariz. 605, 608, ¶ 6 (App. 2014). Taxable costs are defined in § 12-332(A). In arguing that the bulk of the costs the court awarded to YCAA were not taxable, Lux Air overlooks that § 12-332(A)(6) allows the court to order reimbursement of other expenses "that are made or incurred pursuant to . . . agreement of the parties."

¶34        As allowed by § 12-332(A)(6), the leases at issue here expressly permitted the prevailing party in a litigation to recover "court costs, costs of investigation, and other related expenses." Lux Air does not identify any particular expense that it argues is not taxable under that contract provision. In the absence of argument or citations to the record, we will not parse the long list of expenses for which YCAA sought and obtained an award. *See* ARCAP 13(a)(7). As for the adequacy of evidence supporting the costs, Lux Air does not argue how the court erred by accepting the affidavit YCAA provided in support of the costs.

G.       **Attorney's Fees.**

¶35        Lux Air also argues the superior court erred by awarding YCAA attorney's fees incurred by Kutak Rock, a law firm hired by YCAA's insurer to defend YCAA. Lux Air argues YCAA and Kutak Rock did not

have an attorney-client relationship and YCAA's insurer paid the law firm's fees, not YCAA. We review an award of attorney's fees for abuse of discretion. *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 265, ¶ 18 (App. 2004).

**¶36** The superior court did not abuse its discretion in awarding the fees. There is no dispute that Kutak Rock appeared on behalf of YCAA in the litigation, and Lux Air does not challenge the reasonableness of the fees incurred. Under these circumstances, we long have held that the court may award fees incurred by a law firm hired and paid by an insurer on behalf of its insured. *Orfaly*, 209 Ariz. at 267, ¶ 27; *Catalina Foothills Ass'n, Inc. v. White*, 132 Ariz. 427, 428 (App. 1982) (contrary rule would "misdirect the benefit derived through the foresight of the cautious individual who procured insurance" and "would also discriminate against the insurance company").

**¶37** Lux Air argues that caselaw teaches otherwise, citing *Moedt v. Gen. Motors Corp.*, 204 Ariz. 100 (App. 2002). But *Moedt*, and the case on which it relied, *Lisa v. Strom*, 183 Ariz. 415 (App. 1995), are not relevant to the issue presented here. In *Lisa*, an attorney and his law firm had represented the attorney and his wife in the litigation; we held fees could not be awarded because the attorney and his wife were not obligated to reimburse the firm for the work performed on their behalf. 183 Ariz. at 419. In *Moedt*, we upheld a fees award to a plaintiff who had sued for breach of a car warranty under statutes authorizing fees awards to prevailing parties. 204 Ariz. at 102, 104, ¶¶ 2-4, 14. Citing *Lisa*, the defendant argued that because the plaintiff's lawyer was representing her on a contingent fee, a fees award was improper because the plaintiff was not personally obligated to pay the lawyer. *Moedt*, 204 Ariz. at 103, ¶ 10. We rejected that argument, holding that the client's fee agreement was sufficient because it "created a financial obligation" between herself and the law firm. *Id.* at 104, ¶ 12. Neither case addressed the situation in *Orfaly* or *Catalina Foothills*, where we upheld fees awards to compensate insurers that were financially obligated to pay the lawyers they had retained to represent their insureds.

## H.    Prejudgment Interest.

**¶38** In their pretrial statement, YCAA and Lux Air agreed to an amount of damages to be awarded to YCAA if it prevailed. The parties also stipulated in their pretrial statement that the prevailing party would be entitled to interest, and, after ruling in favor of YCAA, the superior court awarded YCAA prejudgment interest of $701,040.61 on damages of $998,516. On appeal, Lux Air argues prejudgment interest was not proper

because the damages were not liquidated, given that the stipulation in the pretrial statement was "contingent upon the outcome of the case."

**¶39** A litigant has a right to prejudgment interest on a liquidated claim. *Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 288, ¶ 32 (App. 2009). A claim is liquidated if the litigant "provides a basis for precisely calculating the amounts owed" so that, accepting the evidence, one can "calculate exactly the amount of damages without relying on the opinion or discretion of a judge or jury." *Id.* at 288, ¶ 33. We review *de novo* a superior court's award of prejudgment interest. *Id.* at 288, ¶ 32.

**¶40** Contrary to Lux Air's contention, any damage award is "contingent upon the outcome of the case." The issue is whether the damages were liquidated, which turns on whether, assuming a claimant prevails on the merits, the *amount* of damages is ascertainable without resort to opinion or discretion. *See Cendejas*, 220 Ariz. at 288, ¶ 33.

**¶41** More generally, Lux Air argues that because the total damages were stipulated, "there was no evidentiary basis to parse the stipulated sum into components for purposes of assessing prejudgment interest." Because the parties had stipulated to the total amount of damages to which YCAA might be entitled, the superior court did not permit YCAA to offer evidence in support of any of its damages. In its proposed findings of fact and conclusions of law, however, YCAA itemized its various damages, including unpaid rent and fuel flowage fees due under the leases, storage fees YCAA incurred for the items Lux Air left behind after the eviction, and the costs YCAA incurred in completing Lux Air's unperformed lease obligations, including the construction of a new terminal and removal of underground fuel storage tanks. Lux Air neither contested YCAA's proposed findings and conclusions, nor did it file its own proposed findings and conclusions.

**¶42** With its post-trial application for fees and costs, YCAA sought prejudgment interest and attached a table that specified the date on which interest should begin to run for each category of damages. Lux Air did not lodge any objection to YCAA's proposed prejudgment interest amounts, nor did it argue that any of the categories of damages were unliquidated. Further, on appeal, Lux Air does not identify any particular item of damages that it contends was unliquidated. In any event, having failed in the superior court to object that the damages were not liquidated, Lux Air may not press the matter here. *See Brown v. U.S. Fidelity & Guar. Co.*, 194 Ariz. 85, 88, ¶ 9 (App. 1998).

**¶43** Additionally, although Lux Air argues the court's calculation of prejudgment interest has no support in the record, the detailed calculations that YCAA provided to the superior court, to which Lux Air did not object, amply support the court's award of prejudgment interest.

## CONCLUSION

**¶44** For the reasons set forth above, we affirm the superior court's judgment in favor of YCAA. YCAA is entitled to its costs on appeal and, in the exercise of our discretion, we award YCAA its reasonable attorney's fees pursuant to A.R.S. § 12-341.01(A) (2019), contingent upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA